# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2013

No. 11-30824

Lyle W. Cayce
Clerk

GARY W. KLEIN,

Plaintiff–Appellee

v.

NABORS DRILLING USA L.P.,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, GARZA, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Nabors Drilling USA L.P. ("Nabors") appeals the district court's denial of its motion to compel the arbitration of Gary Klein's age discrimination claim. Because we find that Klein agreed to conclusively resolve this dispute through arbitration, we REVERSE the district court's order and REMAND for entry of an order compelling arbitration.

## Background

In 2008, Klein began working for Nabors as a floor hand on a drilling rig. As a condition of employment, Klein was asked to sign an Employee Acknowledgment Form (the "Acknowledgment"), indicating his agreement to resolve disputes through the Nabors Dispute Resolution Program (the

No. 11-30824

"Program"). The Acknowledgment provided that the Program was not a contract for employment and that nothing in the Program was "intended to violate or restrict any rights of employees guaranteed by state or federal laws." It also provided that Klein would be required to adhere to the Program and its requirement for submission of disputes to a process that could involve "mediation and/or arbitration." Klein signed the Acknowledgment.

Nabors eventually terminated Klein's employment. Believing he was fired because of his age, Klein sued Nabors in the Western District of Louisiana, alleging that Nabors had violated the Age Discrimination in Employment Act and the Louisiana Employment Discrimination Law. Relying on Klein's agreement to adhere to the Program, Nabors moved to compel arbitration and to stay the proceedings.

The district court found, however, that neither the Program nor the Acknowledgment "contain[ed] an arbitration agreement or any other language indicating the parties were agreeing, ultimately and exclusively, to arbitrate their disputes." Instead, the court recognized that the Acknowledgment explicitly stated that the Program was not intended to violate or restrict any of Klein's rights, which the court read to include the right to a jury trial. Given this conflicting language, the court declined to find that a party could waive the right to a jury trial through a document that explicitly stated that it was not restricting any of that party's legal rights.

The court also noted that the Acknowledgment included permissive rather than mandatory language by stating that Klein would be required to submit his disputes "to a process that may include mediation and/or arbitration." The court looked to the Program for clarification of the permissive language but found no evidence of an arbitration agreement. Because the Acknowledgment contained both permissive language as to arbitration and language indicating that the Program was not intended to restrict Klein's rights, the court found "that the

2

No. 11-30824

most faithful interpretation of the documents is that they create a Dispute Resolution Program which explicitly provides for pre-dispute mediation and/or arbitration . . . but without excluding the options that already existed, including resolution through judicial proceedings." Because the Program did not prevent Klein from seeking a judicial remedy, the court denied the motion to compel. Nabors timely appealed.

## Discussion

This court reviews de novo a district court's ruling on a motion to compel arbitration. *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 674 (5th Cir. 2006). Our first task is to determine whether the parties agreed to arbitrate the dispute. *Jolley v. Welch*, 904 F.2d 988, 994 (5th Cir. 1990). Two questions guide this analysis: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement"? *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). Because "arbitration is simply a matter of contract between the parties," *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate, *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). That inquiry is governed by ordinary state-law contract principles. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). It is only in step two of the analysis, determining the scope of a valid arbitration agreement, that we apply the federal policy and resolve ambiguities in favor of arbitration. *Id.* at 1073–74. Thus, the question we address affects our method of interpretation.

This case blurs the line between the two steps of our general framework. For example, the initial question of whether there is a valid agreement to arbitrate usually concerns matters of contract formation. *See, e.g., Sherer*, 548 F.3d at 381 (addressing whether a valid arbitration agreement existed between

3

No. 11-30824

a party to the agreement and a nonsignatory). Here, Klein willingly signed the agreement and is undoubtedly bound by its terms.[1] But this case also does not turn on whether this type of dispute is covered by the agreement. Klein's age discrimination claim fits squarely within the Program's definition of "dispute." Instead, the question presented here is whether the Program, which Klein agreed to adhere to, requires him to resolve his dispute through arbitration.

Though this question may not fall naturally into either step, the nature of the inquiry indicates that it is more appropriately analyzed under step one. "Arbitration is strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010) (internal quotation marks omitted). It is thus a method "to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc.*, 514 U.S. at 943. An agreement that allows for disputes to be resolved through either an arbitral or a judicial forum can hardly be considered a "valid agreement to arbitrate" because the parties would not have agreed to submit *any* dispute to arbitration—they would have simply agreed that they had the option available. Thus, our analysis of whether the Program requires arbitration is guided by Louisiana contract principles.[2]

Under Louisiana law, "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045; *see also Prejean v. Guillory*, 38 So. 3d 274, 279 (La. 2010). To determine intent, courts must first look to a contract's plain language. *See Prejean*, 38 So. 3d at 279 ("The

---

[1] Klein suggests in his brief that his agreement to adhere to the Program might be considered coerced rather than voluntary given his inferior bargaining position. He presented similar arguments to the district court, and we agree with the district court that these arguments "are plainly without merit."

[2] The parties do not address the issue of which state's contract law to apply nor do they dispute the district court's decision to apply Louisiana law. We agree with the district court that Louisiana law is appropriate in this case because Klein resides in Louisiana and the facts giving rise to the claim occurred in Louisiana.

reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed."). The words of a contract must be given their generally prevailing meaning, La. Civ. Code Ann. art. 2047, and if they are susceptible to different meanings, they "must be interpreted as having the meaning that best conforms to the object of the contract," *id.* art. 2048; *see also Amend v. McCabe*, 664 So. 2d 1183, 1187 (La. 1995). Additionally, each provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code Ann. art. 2050. When a contract's terms are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. *Id.* art. 2046. But "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." *Id.* art. 2056.

Here, the agreement includes both the Acknowledgment and the Program. The Acknowledgment provides that Klein received a copy of the Program and understood that it was not a contract of employment. The Acknowledgment also explains that nothing in the Program is intended to violate or restrict any rights guaranteed to Klein by state or federal law. By signing the Acknowledgment, Klein agreed to adhere to the Program "and its requirement for submission of disputes to a process that may include mediation and/or arbitration."

The Program itself contains two parts. The first part addresses administrative matters, such as the Program's intended purpose and its scope, while the second part details the Nabors Dispute Resolution Rules (the "Rules"). According to the first part, Nabors designed the Program "to provide a means for the quick, fair, accessible, and inexpensive" resolution of disputes. It was intended "to create an *exclusive* procedural mechanism for the final resolution of all Disputes falling within its terms." (Emphasis added). This intent is manifested in various provisions. Section 4 provides that disputes are to be

"finally and conclusively resolved" under the Program and the Rules, and Section 10 declares that proceedings under the Program are "the exclusive, final, and binding method" of resolution. These provisions apply to and bind Nabors and all its employees.

It is clear from the Rules, however, that the Program does not preclude the use of nonbinding dispute resolution methods as a way to avoid arbitration. For example, the Rules provide two ways for a party to initiate proceedings: (1) a party can serve a written request to initiate proceedings on either the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS"), or (2) an employee can serve a written request on Nabors' Program Administrator, who will then forward the request to either AAA or JAMS. Once the process is initiated, AAA or JAMS "shall convene an administrative conference" to determine whether the parties are in agreement on a method to resolve their dispute. If the parties are in agreement, AAA or JAMS will implement the procedure in accordance with their rules. Additionally, "the Parties may agree to mediate their dispute" at any time before the proceeding under the Program closes. But if the parties cannot agree on a method to resolve their dispute, "the Dispute *shall be arbitrated* under the[] Rules." (Emphasis added). Additionally, if the parties "previously attempted and failed to resolve the Dispute by mediation or another nonbinding mechanism, the Dispute *shall be arbitrated* under the[] Rules." (Emphasis added).

Interpreting the Acknowledgment and the Program as a whole, we find an unambiguous common intent that arbitration is to be the final, binding method of resolution under the Program. The allowance of nonbinding methods does not change the analysis. Parties are always free to attempt to work together and reach a mutually beneficial result before absorbing the not insignificant costs associated with arbitration. Their decision to do so does not strip an arbitration agreement of its effect. Instead, the ultimate inquiry is whether the parties

No. 11-30824

executed a valid agreement "to settle by arbitration a controversy" arising out of its terms. 9 U.S.C. § 2. Because arbitration is the only binding method of resolution provided for under the Program, which was intended to create the exclusive procedural mechanism for the final resolution of all disputes, Klein must submit his dispute to arbitration.

Klein's arguments to the contrary are unpersuasive. He argues that at a minimum the Program is ambiguous as to whether it precludes a judicial forum and points to the permissive language in the Acknowledgment and the language regarding the restriction of rights as evidence that the agreement does not limit his ability to have a court resolve his dispute. Based on this ambiguity, Klein argues that we should construe these two provisions against Nabors as the district court did. But these provisions "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code Ann. art. 2050. When interpreted in this manner, the conflicts that Klein identifies are eliminated.

As mentioned above, the Program preserves options for nonbinding dispute resolution before final, binding arbitration. Thus, the permissive language in the Acknowledgment simply reflects a party's available options under the Program. At no point, however, does the Program include judicial resolution among those options. Instead, the Program is explicit as to the method to use when the parties cannot resolve the dispute on their own: arbitration. Thus, the permissive language does not cast doubt on the unambiguous intent of the Program to resolve disputes outside of the courtroom.

Klein's reliance on the Acknowledgment's provision indicating that the Program is not intended "to violate or restrict any rights of employees guaranteed by state or federal law" is also misplaced. Despite the provision's breadth, interpreting it to include "the procedural right to a jury trial" would create an unnecessary conflict with the Program's unambiguous language

7

regarding arbitration as the exclusive procedural mechanism for resolving disputes. Our task is to interpret each provision in a manner consistent with the contract as a whole—not to tailor our interpretation of the entire contract to fit one provision. When interpreting the provisions together, it becomes clear that the Acknowledgment disclaims a restriction only on *substantive* rights that would have been available to Klein in a judicial forum. This interpretation is consistent with both the Program's language and the law governing arbitration agreements. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); *Garrett*, 449 F.3d at 678 (citation omitted) ("An agreement to arbitrate under the FAA is effectively a forum selection clause, not a waiver of substantive statutory protections and benefits."). As a result, we reject Klein's argument to the contrary.

## Conclusion

The Program evinces an unambiguous intent to arbitrate disputes. Klein agreed to adhere to the Program. He is therefore required to submit his age discrimination claim to arbitration. We REVERSE the district court's order and REMAND with instructions to grant the motion to compel arbitration.