**AFFIRMED; Opinion Filed July 11, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01754-CV

**TEXAS HEALTH RESOURCES AND TEXAS HEALTH PRESBYTERIAN HOSPITAL DALLAS D/B/A PRESBYTERIAN HOSPITAL OF DALLAS, Appellants**

**V.**

**MICHELLE KRUSE, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-09473-L**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Myers

Texas Health Resources and Texas Health Presbyterian Hospital Dallas d/b/a Presbyterian Hospital of Dallas (Texas Health) appeal the order denying their motion to compel arbitration. Texas Health brings two issues contending the trial court erred by denying the motion to compel arbitration and by failing to conduct an evidentiary hearing on Texas Health's motion to compel arbitration. We affirm the trial court's order.

### BACKGROUND

Michelle Kruse was an employee of Texas Health beginning in 1989. In March 1999, Kruse signed an acknowledgment that she received a copy of Texas Health's employee handbook and that she was "responsible for reading the contents of this book and abiding by THR policies, specifically including the ADR [Alternative Dispute Resolution] policy, while employed by Texas Health Resources." The handbook contained a summary of the ADR policy,

stating that Texas Health "encourages its use." The handbook also stated that employees could use formal, binding arbitration for "eligible issues."

On February 2 and October 16, 2009 Kruse signed another form titled, "Texas Health Values: Respect, Integrity, Compassion, Excellence[—]Affirming Our Business Code of Ethics and Commitment to Confidentiality." This form did not mention the ADR policy or arbitration but stated the employee was responsible for being familiar with and adhering to Texas Health's policies, procedures, and business code of ethics and knew how to access the policies posted on Texas Health's intranet site.

In 2013, Kruse filed suit against Texas Health alleging Texas Health racially discriminated against her and terminated her as retaliation for filing claims against Texas Health with the Equal Employment Opportunity Commission. Texas Health answered and filed a motion to compel arbitration, asserting the Federal Arbitration Act (9 U.S.C. §§ 1–16) and the Texas Arbitration Act (TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098 (West 2011)) required that Kruse's suit be submitted to binding arbitration pursuant to Texas Health's ADR policy. Following a hearing, the trial court denied the motion to compel arbitration. Texas Health brings an interlocutory appeal of that ruling. *See* 9 U.S.C. § 16(a)(1)(A), (B); CIV. PRAC. § 51.016 (West Supp. 2013), § 171.098(a)(1) (West 2011).

## MOTION TO COMPEL ARBITRATION

Texas Health contends in its first issue that the trial court erred by denying its motion to compel arbitration.

In reviewing an order denying a motion to compel arbitration under the Texas Arbitration Act, the appellate court applies a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determinations. *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.); *In re Trammell*, 246

–2–

S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.). "This standard is the same as the abuse of discretion standard of review . . . ." *Sidley*, 327 S.W.3d at 863. When reviewing an order denying a motion to compel arbitration under the Federal Arbitration Act, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). "Whether an arbitration agreement is enforceable is subject to de novo review." *Id.*

A party seeking to compel arbitration has the initial burden of establishing the parties agreed to arbitration and that the claims fall within the agreement's scope. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the trial court finds a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the arbitration agreement. *Id.* The trial court's determination of the validity of an arbitration agreement is a legal question subject to de novo review. *Id.* Whether an agreement to arbitrate is enforceable is reviewed de novo. *Labatt Food Servs.*, 279 S.W.3d at 643.

To prove that a valid agreement to arbitrate exists, the employer must prove that the employee (1) received notice of the employer's arbitration policy and (2) accepted it. *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006) (orig. proceeding) (per curiam). An employee has notice if she has knowledge of the terms of the policy. *In re Halliburton*, 80 S.W.3d 566, 568 (Tex. 2002) (orig. proceeding) (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)). "In law, whatever fairly puts a person on inquiry is sufficient notice, whether the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained." *Burlington N.R. Co. v. Akpan*, 943 S.W.2d 48, 51 (Tex.

App.—Fort Worth 1996, no writ) (quoting *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex. Comm'n App. 1928, judgm't adopted)).

Arbitration agreements are interpreted under traditional contract interpretation principles. *J.M. Davidson*, 128 S.W.3d at 227. If a contract can be given a certain legal meaning or interpretation, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). An unambiguous contract is interpreted as a matter of law. *Id.* If a contract's meaning is uncertain and doubtful, or if the contract is reasonably susceptible to more than one meaning, then the contract is ambiguous. *Id.* The interpretation of an ambiguous contract is an issue for the trier of fact. *Id.* But if a contract is not ambiguous, "its construction and meaning become a question of law for the court to determine." *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.) (quoting *Dedier v. Grossman*, 454 S.W.2d 231, 234 (Tex. Civ. App. —Dallas 1970, writ ref'd n.r.e.)). "[T]he primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker*, 650 S.W.2d at 393. "To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of a contract so that none will be rendered meaningless." *Id.* (emphasis omitted).

## AGREEMENT TO ARBITRATE

Kruse asserted in her response to the motion to compel arbitration that the arbitration provision in the ADR policy was permissive, not mandatory, and that she never received notice that the arbitration provision was the mandatory and exclusive procedure for her to bring her claim of racial discrimination and retaliation. Texas Health asserted that the ADR policy provided that arbitration was mandatory and that it was the exclusive procedure for Kruse's claim.

In 1999, Texas Health provided notice to Kruse of the existence of its ADR policy by providing her the employee handbook. The handbook did not contain the ADR policy but purported to include a summary of it.[1] The handbook stated that "employees may, for eligible issues, seek formal resolution of disputes through the binding arbitration process." The ADR policy stated that "[e]ligible issues . . . are those which involve Negative Employment Action," and Kruse's allegation that she was terminated was a "Negative Employment Action" as defined in the ADR policy. The handbook provided Kruse with notice that Texas Health had an arbitration process for employment-related disputes. The handbook did not state that the ADR policy was the only manner in which "eligible issues" could be resolved, nor did it explain what issues were "eligible" for resolution under the ADR policy. We conclude that the employee handbook did not establish that the arbitration provision in the ADR policy was the mandatory and exclusive procedure for Kruse to bring her claim.

In 2009, Kruse signed identical notices titled, "Texas Health Values: Respect, Integrity, Compassion, Excellence[—]Affirming Our Business Code of Ethics and Commitment to Confidentiality." The bottom of the notice described it as a "performance evaluation tool." The notice itself provided information about Texas Health's policies concerning "Confidential

---

[1] The employment handbook described the ADR policy as follows:

> THR encourages employees to address employment-related issues and concerns with their peers and with their immediate supervisors. Current or former employees who are unable to settle work-related complaints are encouraged to present their concerns through THR's confidential Alternative Dispute Resolution (ADR) process. This process allows for an internal review panel to review eligible issues and make a recommendation to senior management concerning resolution of the dispute.

> After utilizing the Internal review process, employees may, for eligible issues, seek formal resolution of disputes through the binding arbitration process in which a neutral third party reviews the findings and makes a final and binding decision.

> The ADR process provides employees with a fair and impartial forum in which to settle disputes rather than through court litigation. Texas Health Resources does not tolerate any retaliation, harassment or intimidation of any employee who is involved in the ADR process. If you have questions concerning the ADR process, or need a copy of the ADR Policy and procedures, please contact Human Resources.

Information" and "Protected Health Information."  The notice did not expressly mention the ADR policy or arbitration.  The notice did state,

> I understand that I am responsible for being familiar with and adhering to Texas Health's policies, procedures and the Code of Business Ethics.  I know how to access Texas Health policies that are posted on the Texas Health intranet site.  If I am unclear about a policy, procedure or regulatory requirement, I know it is my responsibility to seek clarification from my supervisor, Human Resources or through the Chain of Command process.  I understand that the Texas Health Compliance Hotline is also available to me to ask questions, communicate concerns or report suspected misconduct.
>
> . . . .
>
> I acknowledge that I am responsible for complying with all policies of Texas Health.  These are described on MyTHRConnection.

This document does not provide that the arbitration provision was the mandatory and exclusive means for Kruse to bring her claim.

We next consider whether Texas Health's ADR policy provided that arbitration was mandatory and exclusive or permissive and nonexclusive.  Arbitration is permissive when the agreement to arbitrate requires both parties to subsequently agree to submit the issue to arbitration with the option of rejecting arbitration.  *See Travelers Indem. Co. v. Tex. Mun. League Joint Self-Ins. Fund*, No. 01-08-00062-CV, 2008 WL 2756874 (Tex. App.—Houston [1st Dist.] July 17, 2008, no pet.) (mem. op.).  In *Travelers Indemnity Co.*, the arbitration provision provided that "either party may . . . seek to arbitrate any dispute."  *Id.* at *1.  The agreement provided that the opposing party then had thirty days "by written response, [to] accept or reject such a request."  If the arbitration request was accepted, then each party had to appoint an arbitrator within thirty days.  *Id.*  The court of appeals concluded the arbitration provision was permissive and not mandatory.  *See id.* at *3.

Texas Health's arbitration provisions,[2] which it called the "External Process," contain a provision that, on its face, indicates arbitration was permissive and not mandatory. Section 7.2.1 of the policy provides, "Binding Arbitration requires the employee and THR *to commit* to resolution of all eligible issues and be bound by the decision of the arbitrator." (Emphasis added.) The wording does not establish that the parties, by reason of the ADR policy, are already committed to using arbitration to resolve the dispute. Instead, it provides that each party

[2] Texas Health's ADR policy contains the following provisions concerning arbitration:

**7.0     External Process**

7.1 Any employee seeking the External Process must first seek to resolve the issue within the Internal Review Process. The Executive Vice President of People and Culture must approve exceptions to this provision of the policy.

7.2 Binding Arbitration – External Process

7.2.1 The External Process - Binding Arbitration requires the employee and THR to commit to resolution of all eligible issues and be bound by the decision of the arbitrator.

7.2.2 The employee along with management will select a neutral, third party arbitrator from a list of arbitrators available from Human Resources. If no mutual selection is reached the arbitrator will be selected under the rules of the American Arbitration Association. The employee may choose at his or her own expense, to have an attorney represent him or her during the arbitration process.

7.2.3 The written procedures and details of the arbitration process including the discovery process and the authority of the arbitrator, are available to employees upon written request.

7.2.4 Arbitration is a substitute for court litigation but does not give the employee the right to bring claims which would not be actionable in a court of law.

7.2.5 The External Process with Binding Arbitration is the final step in resolving disputes covered by this policy. Disputes which are covered by this policy shall be finally and exclusively resolved under either the Internal or External Process of this policy.

7.2.6 If an employee files a lawsuit regarding issues covered by the policy, THR will request the court to require that the case be resolved under these procedures. Employees who are named as co-defendants must agree to the arbitration procedures if they want THR to pay their defense costs (assuming they are otherwise eligible to have such costs paid). The policy does not affect an employee's rights to pursue the issue through outside agencies, nor does it modify the at-will employment relationship of THR employees.

7.2.7 Either Party, at its expense, may arrange for and pay the cost of a court reporter to provide a record of the proceedings. Either Party may bring an action in any court of competent jurisdiction to enforce an arbitration award or to vacate an arbitration award. In actions seeking to vacate an award, the standard of review to be applied to the arbitrator's findings of fact and conclusions of law will be same as that applied by an appeals court reviewing a decision of a trial court sitting without a jury.

7.3 External Process and Binding Arbitration Time Requirements

7.3.1 The employee should request the External Process, Binding Arbitration within thirty days of the completion of the Internal Review Process, but in no event may such request be made after 300 days from the Negative Employment Action.

7.3.2 The hearing will be scheduled based upon the availability of the arbitrator selected.

7.3.3 The hearing will continue until the arbitrator feels that he or she has enough information to make a final decision. At any time, the arbitrator may entertain a motion to dismiss and/or motion for summary judgement [sic] by either party using the standards under the Federal Rules of Civil Procedure.

7.3.4 The Executive Vice President of People and Culture will approve any deviation from the specified time frames.

must still make the decision whether to commit itself to resolving the dispute through arbitration. Nothing in the policy indicates arbitration is the sole manner of resolving an eligible issue. Instead, the policy indicates that arbitration is reserved only for eligible issues to which both the employee and Texas Health have committed to be bound by the decision of the arbitrator. Kruse's claim is an "eligible issue," but Kruse did not commit to be bound by the decision of the arbitrator. Although the permissive nature of the arbitration in this case is not as clear as that in *Travelers Indemnity Co.*, the requirement that the parties, having gone through the internal review process, "must commit to resolution of all eligible issues and be bound by the decision of the arbitrator" means that the parties have a choice between committing or not committing to arbitration.

Texas Health asserts the arbitration provision was a mandatory requirement. Texas Health argues the employee handbook made clear that the ADR policy encompassed "employment-related issues and concerns" and "work-related complaints." We agree that Kruse's complaint is an "eligible issue" as defined in the ADR policy because it involved a Negative Employment Action, her termination. However, the employee handbook stated it "encouraged" employees to present their concerns about work-related complaints through the ADR process, which would provide for an internal review of eligible issues. "Encouraging" use of alternate-dispute-resolution procedures and arbitration does not make those procedures mandatory. *See Int'l Ass'n of Firefighters, Local Union No. 399. v. City of Beaumont*, 763 S.W.2d 57, 57 (Tex. App.—Beaumont 1988, writ denied) (statute for union's collective bargaining process "encourages" the parties to use arbitration but did not require arbitration).

Texas Health argues that other provisions of the ADR policy show the mandatory nature of the arbitration process. Section 2.2 of the ADR policy states, "The policy is intended to create a method for the final resolution of eligible disputes arising between THR and employees hired

on or after November 18, 1998 and disputes arising after the effective date for all employees who elect to remain THR employees." The fact that Texas Health intended for the policy "to create *a* method" for finally resolving all "eligible disputes" does not mean it was the exclusive method for dispute resolution.

Texas Health also cites to section 7.2.4 of the ADR policy: "Arbitration is a substitute for court litigation but does not give the employee the right to bring claims which would not be actionable in a court of law." This provision does not indicate that arbitration is mandatory and exclusive. It establishes only that if arbitration is agreed to by the parties, then it "is a substitute for court litigation but does not give the employee the right to bring claims which would not be actionable in a court of law." Nothing in that provision makes arbitration mandatory and exclusive.

Texas Health also cites to section 7.2.5: "The External Process with Binding Arbitration is the final step in resolving disputes covered by this policy. Disputes which are covered by this policy shall be finally and exclusively resolved under either the Internal or External Process of this policy." However, if the parties had not "committed" to resolution of the issue through arbitration, then the dispute is not "covered by the policy" for arbitration. In other words, this provision provides that if the parties commit to arbitration, then arbitration is the exclusive means for resolving the eligible issue. But it does not purport to make arbitration the exclusive means for resolving issues that the parties had not committed to resolving through binding arbitration.

Texas Health also cites to section 7.2.6: "If an employee files a lawsuit regarding issues covered by the policy, THR will request the court to require that the case be resolved under these procedures." However, the parties' agreement that Texas Health can ask the courts to require the

–9–

eligible issue be resolved through arbitration does not mean the request would necessarily be granted. Nor does it mean the employee has no right to pursue the eligible issue in the courts.

Texas Health also relies on information in a document titled, "Questions and Answers—Alternative Dispute Resolution" (FAQs). Texas Health conceded that the FAQs were not part of the ADR policy. Moreover, Kruse testified in her affidavit that she never received a copy of the FAQs, and Texas Health presented no evidence that she had received one. Also, Texas Health presented no evidence that the FAQs were on the intranet. Accordingly, Texas Health presented no evidence that the FAQs formed part of the parties' agreement.

Texas Health also cites cases stating that arbitration agreements containing permissive terms such as "may" are still mandatory. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007) (orig. proceeding) ("either party 'may request' arbitration"); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 881, 888 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding) (agreement stated parties "may submit" disputes to arbitration association); *BWI Cos. v. Beck*, 910 S.W.2d 620, 623–24 (Tex. App.—Austin 1995, orig. proceeding) ("Any employee who participates in [the Private Dispute Process] may use it to resolve any employment-related legal dispute . . . ."); *see also Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 239 (5th Cir. 2013) (acknowledgment employee signed stating ADR program with arbitration was not "intended to violate or restrict any rights of employees guaranteed by state or federal law" did not make arbitration nonexclusive). However, none of the arbitration agreements in these cases contained a term analogous to the "commit" requirement of the arbitration provision in this case.

Because Texas Health's arbitration clause provided that arbitration was permissive and not the mandatory and exclusive means to resolve Kruse's claims, we conclude the trial court did

not abuse its discretion by denying Texas Health's motion to compel arbitration. We overrule Texas Health's first issue.

## EVIDENTIARY HEARING

In its second issue, Texas Health contends the trial court erred by failing to conduct an evidentiary hearing on the motion to compel arbitration. Section 171.021(b) of the civil practice and remedies code provides, "If a party opposing an application [for arbitration] denies the existence of the agreement, the court shall summarily determine that issue." CIV. PRAC. § 171.021(b). The trial court makes this summary determination based on the parties' affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding). This procedure is akin to a motion for summary judgment and is subject to the same evidentiary standards. *See In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). If there is a genuine question of material fact concerning the existence of the agreement, the trial court may not summarily grant or deny the motion to compel arbitration but must conduct an evidentiary hearing to resolve the disputed material facts. *Id.* at 757; *see Gunda Corp., LLC v. Yazhari*, No. 14-12-00263-CV, 2013 WL 440577, *6 (Tex. App.—Houston [14th Dist.] Feb. 5, 2013, no pet.) (trial court erred by denying motion to compel arbitration before holding evidentiary hearing on disputed issue of material fact); *In re Jebbia*, 26 S.W.3d at 759 (trial court abused discretion by granting motion to compel arbitration when there were issues of material fact on whether the agreement was enforceable).

In this case, however, there is no genuine question of material fact. The arbitration policy is unambiguous, and its interpretation is a matter of law, not a question of fact. *See Coker*, 650 S.W.2d at 393. Accordingly, the trial court was not required to hold an evidentiary hearing before denying Texas Health's motion to compel arbitration. We overrule Texas Health's second issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

131754F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TEXAS HEALTH RESOURCES AND
TEXAS HEALTH PRESBYTERIAN
HOSPITAL DALLAS D/B/A
PRESBYTERIAN HOSPITAL OF
DALLAS, Appellants

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-09473-L.
Opinion delivered by Justice Myers.
Justices Lang and Brown participating.

No. 05-13-01754-CV        V.

MICHELLE KRUSE, Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee MICHELLE KRUSE recover her costs of this appeal from
appellants TEXAS HEALTH RESOURCES AND TEXAS HEALTH PRESBYTERIAN
HOSPITAL DALLAS D/B/A PRESBYTERIAN HOSPITAL OF DALLAS.

Judgment entered this 11th day of July, 2014.