# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2014

Lyle W. Cayce
Clerk

No. 13-10922

ROBERT JOHN SHARPE; CINDY GUARISCO; WILLIAM CHASE MOEN; GARY DOWNARD; for themselves as individuals and on behalf of themselves and for all others similarly situated,

      Plaintiffs - Appellants

v.

AMERIPLAN CORPORATION, a Texas Corporation; DENNIS BLOOM, an individual; DANIEL BLOOM, an individual; DOES, 1-100 Inclusive;

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before  DAVIS, ELROD, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:[*]

As the use of arbitration clauses grows, so too do the legal arguments surrounding their validity and enforceability.  In this appeal of a district court's order compelling arbitration, Plaintiffs raise numerous challenges to an arbitration clause, including the following: that the arbitration clause was not supported by consideration, is illusory, is unconscionable, does not cover the dispute in this case, and was waived because it was not raised early enough in

---

[*] Judge Costa participated by designation in the oral argument of this case as a United States District Judge for the Southern District of Texas.  Since that time he has been appointed as a Fifth Circuit Judge.

No. 13-10922

the lawsuit.  We find these arguments unavailing, but one more that Plaintiffs raise warrants closer consideration under the unusual facts of this case: they contend that the arbitration clause cannot be harmonized with other dispute resolution procedures contained in earlier agreements that remain in effect.

## I.

The independent business owners (IBOs) in AmeriPlan's network earn income by selling health plans and recruiting additional IBOs.  If IBOs fulfill certain criteria, they can achieve the rank of Sales Director and generate "lifetime residual income" through commissions from the IBOs they recruit—known as their "down lines."  The four named Plaintiffs were all Sales Directors by the time AmeriPlan terminated their contracts.

AmeriPlan gave Plaintiffs notice that it was terminating their contracts without cause on February 14, 2011, along with approximately 800 other Sales Directors.  After issuing one final commission check, AmeriPlan ceased paying the residual income generated by the Sales Directors' down lines.  Plaintiffs filed suit, alleging that the promised lifetime vested residual income was a misrepresentation and that AmeriPlan had breached their contracts by ceasing the payments.

## A.

Three contracts "represent the entire agreement by and between the Parties": (1) the Broker Application and Agreement; (2) the Sales Director Agreement; and (3) the Policies and Procedures Manual.  The Broker and Sales Director Agreements, which incorporate the Manual by reference, include an amendment provision stating that they "may not be changed except by written amendment duly executed by all parties, except as otherwise provided in this Agreement."  The Broker Agreement provides, however, that the Manual can "be hereinafter amended, modified or revised in the sole discretion of AmeriPlan . . . and Broker further covenants and agrees to obtain and comply

2

with any and all such amendments, modifications or revisions of the Broker Manual which may be hereinafter made by AmeriPlan."[1]

The agreements are not the same for every plaintiff. Two of them—Robert John Sharpe and Gary Downard—signed Sales Director Agreements (in 2001 and 1998, respectively) that contain the following language:

> 6.07.01.    THE PARTIES AGREE TO SUBMIT ANY CLAIM, CONTROVERSY OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT (AND ATTACHMENTS) OR THE RELATIONSHIP CREATED BY THIS AGREEMENT TO NON-BINDING MEDIATION PRIOR TO FILING SUCH CLAIM CONTROVERSY OR DISPUTE IN A COURT. . . . NOTWITHSTANDING THE FOREGOING, THE PARTIES MAY BRING AN ACTION (1) FOR MONIES OWED, (2) FOR INJUNCTIVE OR OTHER EXTRAORDINARY RELIEF, OR (3) INVOLVING THE POSSESSION OR DISPOSITION OF, OR OTHER RELIEF RELATING TO, REAL PROPERTY IN A COURT HAVING JURISDICTION AND IN ACCORDANCE WITH [THE NEXT PARAGRAPH] BELOW, WITHOUT SUBMITTING SUCH ACTION TO MEDIATION.

> 6.07.02.    WITH RESPECT TO ANY CLAIMS, CONTROVERSIES OR DISPUTES WHICH ARE NOT FINALLY RESOLVED THROUGH MEDIATION, SALES DIRECTOR HEREBY IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE COURTS OF DALLAS COUNTY, TEXAS AND THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION. . . . VENUE FOR ANY LEGAL PROCEEDING RELATING TO OR ARISING OUT OF THIS AGREEMENT SHALL BE DALLAS COUNTY, TEXAS . . . . THIS AGREEMENT SHALL BE INTERPRETED AND CONSTRUED UNDER TEXAS LAWS.

---

[1] Plaintiff Guarisco's Agreement has slightly different wording for this provision: "Broker further acknowledges that he/she has received a copy of AmeriPlan's Policies and Procedures and Compensation Plan which are expressly incorporated into this Agreement by reference. Broker agrees to abide by all Policies and Procedures contained therein and any amendments, revisions or additions thereto."

No. 13-10922

William Moen's Sales Director Agreement (executed in 2004), while identical in other relevant respects, moves the jurisdiction and venue provisions one county north, to Collin County, where AmeriPlan maintains its corporate headquarters.

In contrast, Cindy Guarisco's Sales Director Agreement, signed years earlier in 1994, contains the following provision titled "Governing Law and Venue": "This agreement is to be governed by and construed in accordance with the laws of the State of Texas.  Any action brought on matters relating to this Agreement shall be maintained in Dallas, Dallas County, Texas."  The difference between these provisions will become important.

None of the Sales Director Agreements contained an arbitration clause when the Plaintiffs entered into them.  Nor did the original Policy Manual.

That changed after August 2010, when a Dallas County jury returned a $5.5 million verdict in favor of a Sales Director who claimed that AmeriPlan had failed to pay the promised lifetime residual income.  Less than three months later, on November 15, AmeriPlan issued a revised version of the Policy Manual, which contained an arbitration clause. AmeriPlan made continued access to each Sales Director's "back office" web portal contingent upon agreement to the revised Policy Manual.  Moen and Sharpe each clicked "I Agree" on the website to gain access to their portals.  Guarisco and Downard never logged on to the website, so AmeriPlan mailed them a letter explaining that the Policy Manual had been updated, along with a paper copy of the revisions.

The arbitration provision, located on page 22 of the revised Policy Manual under the heading "Arbitration of Disputes," states:

> Any issue, dispute, claim or controversy (collectively, the "Claim")
> between AmeriPlan or any officer, director, employee, manager,
> member, affiliate, legal counsel and/or advisor of AmeriPlan and
> IBO/Sales Director, arising out of or relating to the Policies and

4

No. 13-10922

Procedures Manual then in effect, the IBO and/or Sales Director Agreements or any of the other documents, shall be resolved by binding arbitration at the AmeriPlan headquarters in Plano, Texas. The Claim shall be governed by the laws of the State of Texas.

Other provisions under the arbitration heading address splitting arbitration expenses and limiting awards to actual damages. The Policy Manual contains a severability clause providing that any unenforceable provisions will not invalidate the remainder of the agreement.

**B.**

On May 21, 2012, Plaintiffs filed this class action in the Superior Court of California for the County of Los Angeles. AmeriPlan removed the case to federal court. Then, invoking the venue provisions in the Sales Director Agreements, AmeriPlan successfully sought a transfer to the Northern District of Texas.

Once the case reached federal court in Dallas, AmeriPlan filed an answer asserting, among other things, that the claims were subject to arbitration. After Plaintiffs filed a motion for class certification, AmeriPlan moved to compel arbitration and stay or dismiss Plaintiffs' claims pursuant to the Federal Arbitration Act.

The magistrate judge issued an opinion recommending dismissal of the action in favor of arbitration. She recommended, however, that the arbitration not be governed by two clauses she found to be substantively unconscionable.[2]

---

[2] The two stricken provisions were paragraphs (h) and (i). Paragraph (h) provided that a material breach occurs if either party circumvents the arbitration clause by seeking remedies through a court of law, and "the breaching party shall bare [sic] all costs of court, attorneys' fees, and other fees arising from the breach"; and paragraph (i) provided that, as a "condition precedent" to filing a claim, the claimant and respondent are each required to deposit $25,000 cash into an escrow account, which shall be applied to the costs of arbitration. *See Sharpe v. AmeriPlan Corp.*, 2013 WL 3927620, at \*7 (N.D. Tex. July 30, 2013).

No. 13-10922

The district court adopted the recommendation and ordered that the case be dismissed without prejudice in favor of arbitration but with the two unconscionable provisions severed from the arbitration provisions. Plaintiffs appeal the decision compelling arbitration.

## II.

We review a district court's ruling on a motion to compel arbitration *de novo. Klein v. Nabors Drilling USA L.P.,* 710 F.3d 234, 236 (5th Cir. 2013).

To determine whether the parties agreed to arbitrate this dispute, we ask two questions: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008). "[A]rbitration is simply a matter of contract between the parties," *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), and the first step of the analysis—the validity of an agreement—is governed by state law contract principles. *Klein*, 710 F.3d at 236. Both parties agree that Texas law applies to this dispute. Only at the second step of the analysis—determining the scope of the arbitration agreement—do courts apply the federal policy favoring arbitration and resolve ambiguities in favor of arbitration. *Id.* at 236–37.

Plaintiffs raise a host of issues contesting both the validity and scope of the arbitration provision added to the Policy Manual. In addition, they assert that the entire arbitration provision is unconscionable and that AmeriPlan waived its right to enforce any agreement to arbitrate by not raising the issue until the case had been transferred to the Northern District of Texas. We first address their argument that the arbitration provision cannot be harmonized with the preexisting dispute resolution provisions contained in the Sales Director Agreements.

No. 13-10922

**A.**

As this court recently explained, the question whether an arbitration provision conflicts with other dispute resolution provisions is properly analyzed under the "validity" step of the arbitration analysis. *Klein*, 710 F.3d at 237. State law, which the parties agree is Texas law, thus controls that question and the Federal Arbitration Act's presumption in favor of arbitration is not implicated. *See id.* at 236–37.[3]

In determining whether the arbitration provision added to the Manual in November 2010 can be harmonized with the dispute resolution provisions in the Sales Director Agreements, the preliminary question is whether the latter provisions survived the amendment to the Manual. Ordinarily an amendment to a contract would supersede prior conflicting provisions,[4] but that is not the case here for two reasons. First, the Broker and Sales Director Agreements, which contain the original dispute resolution provisions, "may not be changed except by written amendment duly executed by all parties, except as otherwise provided in this Agreement." So although the Manual could be amended without the need for a written agreement executed by all parties, such an amendment could not override a provision in the Broker and Sales Director

---

[3] Recent cases from other circuits have followed this same approach. *See, e.g., Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 525–26 (2d Cir. 2011) ("Even assuming, as the district court found, that the provisions in the two agreements could reasonably be read as complementary, we conclude that the district court erred in applying the presumption in favor of arbitration."); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014) ("The flaw in this argument is that it erroneously assumes that the presumption in favor of arbitrability applies. . . . Where, as here, the presumption does not apply, however, we use general state-law principles of contract interpretation to effectuate the intent of the parties. As a result, the mere availability of an alternative reading of the forum selection clauses is beside the point.").

[4] *See, e.g., Cadle Co. v. Henderson,* 982 S.W.2d 543, 546 (Tex.App.—San Antonio 1998, no pet.) ("A modified agreement takes the place of the original."); *Boudreaux Civic Ass'n v. Cox,* 882 S.W.2d 543, 547–48 (Tex.App.—Houston [1st Dist.] 1994, no writ) ("A modification to a contract creates a new contract that includes the new, modified provisions and the unchanged old provisions.").

No. 13-10922

Agreements.  Otherwise, amendments to the Manual could undo the Broker and Sales Director Agreements in their entirety, rendering the "written amendment" requirement a nullity.  Second, AmeriPlan relied on the venue clause, which is included in the dispute resolution provisions in the Sales Director Agreements but does not appear in the arbitration provision of the amended Manual, to transfer the case from the Central District of California to the Northern District of Texas, and thus is estopped from arguing that the dispute resolution provisions are no longer in effect.  Indeed, it concedes that the provisions in the Sales Director Agreements remain in effect, arguing instead that they can be harmonized with the later-added mandatory arbitration provision.

In resolving that harmonization issue, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 333 (Tex. 2011) (quoting *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003)).  Because of the significant differences noted above between the multifaceted dispute resolution provisions in the Sales Director Agreements signed by Sharpe, Moen, and Downard, and the provision in the earlier one signed by Guarisco that only addresses venue and choice of law, we address the provisions separately.

The magistrate court found no "inherent conflict" between the dispute resolution provisions in the Sales Director Agreement and the arbitration provision in the Policy Manual, holding that they could each be given definite meaning as a matter of law because the Sales Director Agreement "merely designates the venue for any [legal] proceedings," while the arbitration provision "requires that certain claims be submitted to binding arbitration." *Sharpe,* 2013 WL 3927620, at *4.  We agree with that conclusion when it comes

8

to Guarisco's agreement. The relevant provision in her Sales Director Agreement includes a choice-of-law clause and then states that "[a]ny action brought on matters relating to this Agreement shall be maintained in Dallas, Dallas County, Texas." There is nothing else. Requiring that any lawsuit be filed in Dallas is not incompatible with the later-added arbitration requirement because lawsuits often precede arbitration (when a court may be asked to decide the validity, scope, and enforceability of an arbitration clause) or follow arbitration (when a court may be asked to enforce or set aside an arbitration award). *See Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 395–96 (5th Cir. 2002) (holding that an arbitration clause could be harmonized with a forum selection clause, which could be read to mean "that the parties must litigate in Texas courts only those disputes that are not subject to arbitration"); *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284–85 (2d Cir. 2005) ("The Forum Selection Clause can be understood . . . as complementary to an agreement to arbitrate."); *In re Winter Park Constr., Inc.,* 30 S.W.3d 576, 578 (Tex. App.—Texarkana 2000, no pet.) (holding that a forum selection clause did not supersede a preexisting arbitration clause because the two provisions could be reconciled). A forum selection clause thus still has effect in determining where any lawsuit—even one that may result in an order compelling arbitration—must be brought.

The relevant provisions in the Sales Director Agreements signed by Sharpe, Moen, and Downard, however, are far more extensive than a forum selection clause. And they do not merely require nonbinding mediation prior to arbitration, as AmeriPlan urges. The dispute resolution provisions in the Sales Director Agreements, which take up close to a full page and are emphasized through the use of all caps, establish a two-tiered approach to resolving claims. The first provision states "the parties agree to submit any claim . . . to non-binding mediation prior to filing such claims, controversy or

dispute in a court."  A second provision then reiterates that claims will be adjudicated in court if mediation is unsuccessful: "With respect to any claims, controversies or disputes which are not finally resolved through mediation, Sales Director hereby irrevocably submits to the non-exclusive jurisdiction" of particular state and federal courts.  This court-focused provision also specifies three types of actions that "the parties may bring . . . in a court having jurisdiction . . . without submitting such action to mediation."  Together, these provisions create a system in which claims will be submitted to the jurisdiction of a court if nonbinding mediation is either unproductive or not required.  The language in Guarisco's agreement demonstrates that AmeriPlan knew how to draft a narrow forum selection clause, and its decision in later Sales Director Agreements to add far more extensive language establishing a full dispute resolution process must be given effect as creating something beyond that.

AmeriPlan's argument that the dispute resolution provisions in the Sales Director Agreements apply to only a limited scope of claims "not governed by arbitration" is also at odds with the contracts' broad language.  In fact, the categories of claims that are listed in the arbitration provision are quite similar to those listed in the Sales Director Agreements.  The Sales Director Agreements refer to "any claim, controversy or dispute" being submitted first to mediation and then the "jurisdiction" of state or federal court, which is similar to the arbitration provision's language stating that "any issue, dispute, claim or controversy . . . shall be resolved by binding arbitration."  *Compare Applied Energetics,* 645 F.3d at 525 ("Here, the Placement Agreement's language that '[a]ny dispute' between the parties 'shall be adjudicated' by specified courts stands in direct conflict with the Engagement Agreement's parallel language that 'any dispute . . . shall be resolved through binding arbitration.' Both provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other."), *with Pers. Sec. & Safety Sys.*, 297 F.3d at

395–96 ("Rather than covering all 'disputes' or all 'claims' like the arbitration provision in the Product Development Agreement, the forum selection clause confers 'exclusive jurisdiction' on Texas courts only with respect to 'any suit or proceeding.' This limitation suggests that the parties intended the clause to apply only in the event of a non-arbitrable dispute that must be litigated in court.").  Again, a comparison with the language in Guarisco's agreement is useful.  The venue provision in Guarisco's agreement states only that "any action . . . shall be maintained in Dallas," not that the "claims, controversies or disputes" will be "submit[ted] to the . . . jurisdiction" of any particular court.  The "submit[ted] to the . . . jurisdiction" language demonstrates an intent for a court to adjudicate the merits of the claims.  *See Union Elec. Co. v. AEGIS Energy Syndicate 1225*, 713 F.3d 366, 369 (8th Cir. 2013) ("[B]y agreeing in the endorsement 'to submit to the jurisdiction of the Courts of the state of Missouri,' [the insurer] has agreed to have, in words near the endorsement's beginning, 'any dispute relating to this Insurance or to a CLAIM' resolved in those courts. The endorsement thus entirely supplants the condition's mandatory arbitration provision.").   The mediation language also supports this view, as it authorizes claims not resolved in mediation "to [be] fil[ed] . . . in a court."

One final comparison is instructive.  The dispute resolution provisions in the Sharpe/Moen/Downard Sales Director Agreements are far more detailed and expansive than the nonbinding mediation provisions we recently harmonized with an arbitration clause in *Klein v. Nabors Drilling USA L.P.* *Klein* held that a general provision stating that nothing in the parties' agreement was "intended to violate or restrict any rights of employees guaranteed by state or federal laws" did not conflict with an unambiguous arbitration provision creating "an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms."  710 F.3d at 239.  The

priority between nonbinding mediation and arbitration was explicitly elucidated in the *Klein* contract, which stated that if the parties "previously attempted and failed to resolve the Dispute by mediation or another nonbinding mechanism, the Dispute shall be arbitrated." *Id.* at 238; *see also, e.g.*, *Bridgestone Firestone N. Am. Tire, LLC v. J & J Tire Co., L.L.C.*, 602 F. Supp. 2d 770, 772 (S.D. Miss. 2009) (noting that all parties agreed that an arbitration clause was valid that stated, "[i]f the parties are unable to resolve the dispute through mediation, then the dispute will be submitted for binding arbitration").

The dispute resolution provisions in the Sharpe/Moen/Downard Sales Director Agreements therefore are not simply forum selection clauses like the one we addressed in *Personal Security & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002), and they do not merely impose a prearbitration mediation requirement like the one at issue in *Klein*. Instead, the Sales Director Agreements provide a two-step dispute resolution process in which "any claims, controversies or disputes which are not finally resolved through mediation [are] submit[ted] to the non-exclusive jurisdiction of" particular state and federal courts. Those expansive dispute resolution provisions cannot be harmonized with the similarly expansive arbitration provision without rendering the dispute resolution provisions meaningless. Accordingly, we hold that because the Sales Director Agreements signed by Sharpe, Moen, and Downard expressly allow litigation of these claims, these three Plaintiffs are not compelled to arbitrate their claims. *See Klein,* 710 F.3d at 237 ("An agreement that allows for disputes to be resolved through either an arbitral or a judicial forum can hardly be considered a 'valid agreement to arbitrate' because the parties would not have agreed to submit *any* dispute to arbitration—they would have simply agreed that they had the option available.").

12

No. 13-10922

## B.

Because Guarisco's limited forum selection clause can be reconciled with the arbitration provision, we must consider the other arguments she raises challenging the order compelling arbitration. There are many of them, but we only briefly address a few because we largely agree with the reasons provided by the district court for why these challenges to the arbitration clause are unsuccessful.

Guarisco argues that the arbitration amendment was not valid for two reasons—that it lacked consideration and was illusory. But bilateral promises to arbitrate, which the amendment contained, constitute valid consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). Nor is the arbitration clause illusory given that AmeriPlan's amendment included a savings clause that tracks the one the Supreme Court of Texas approved in *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002) (orig. proceeding) (enforcing an arbitration clause that allowed the employer to unilaterally amend the agreement because of a savings clause that prevented any unilateral change from being retroactive).

Guarisco contends that even if the arbitration clause is valid, this dispute does not fall within its scope because she filed the lawsuit after she had been terminated and the Manual containing the arbitration clause only applies to "Active" IBOs. Although this argument finds some support in the plain text of the agreement, on this issue the Federal Arbitration Act's presumption favoring arbitration comes into play. Because the Act requires us to read the scope of the clause broadly, we conclude that it does cover this dispute based on representations made and contracts signed while Guarisco was an IBO.

Unconscionability is the next ground Guarisco cites in her attempt to avoid arbitration. Aside from the provisions the district court already found to

13

be unconscionable and that will not apply in Guarisco's arbitration, we do not find that any of the other provisions are unconscionable.

Finally, Guarisco contends that AmeriPlan waived its right to compel arbitration by waiting to file a motion to compel arbitration until after Plaintiffs filed a motion for class certification.  Even though AmeriPlan placed Plaintiffs on notice of its intent to arbitrate once it filed its original answer in Dallas federal court, Guarisco contends that invoking the judicial process to remove the case to federal court and then seek transfer to another federal district indicated an intent to litigate rather than arbitrate that amounts to waiver.  As explained above, however, the forum selection clause gave AmeriPlan the right to have its motion to compel arbitration heard in the judicial forum to which the parties had agreed.  Because it provided notice of its intent to arbitrate in the first answer it filed and the delay between the filing of that answer and the motion to compel was not unreasonable, AmeriPlan did not waive its right to enforce the arbitration clause.  *See Tenneco Resins, Inc. v. Davy Int'l AG*, 770 F.2d 416, 420 (5th Cir. 1985) ("[O]nce the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver.").

Guarisco therefore must arbitrate her claims.

\* \* \*

It may seem arbitrary that Guarisco must arbitrate her claims while her otherwise similarly situated coplaintiffs have the option of pursuing litigation.  But that result flows from the basic contract law principle that different contractual language should be read differently.

For these reasons, with respect to Plaintiffs Sharpe, Moen, and Downard, we REVERSE the district court's order dismissing the claims and compelling arbitration and REMAND for further proceedings consistent with this opinion.  With respect to Guarisco, we AFFIRM the district court's order

No. 13-10922

dismissing her claims and compelling arbitration pursuant to all but the two severed unconscionable provisions of the arbitration agreement.