# United States Court of Appeals for the Fifth Circuit

_____

No. 23-50038

_____

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2023

Lyle W. Cayce
Clerk

Daniel Flores, *on Behalf of Himself and on Behalf of All Others Similarly Situated*,

*Plaintiff—Appellee*,

*versus*

BJ's Restaurant Operations Company; BJ's Restaurants, Incorporated,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-1185

_____

Before Clement, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:[*]

The question presented is whether Daniel Flores and BJ's Restaurants, his former employer, formed a valid agreement to arbitrate under Texas Law. The district court said no. We REVERSE.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

## I.

Flores worked at BJ's. As part of his on-boarding process, Flores signed an agreement to submit any work-related disputes to binding arbitration. That agreement requires individual arbitration and forbids collective action. Nevertheless, he brought a class action suit against the company in federal court alleging that BJ's violated the Fair Labor Standards Act.

BJ's moved to compel arbitration. The district court, adopting the reasoning of the magistrate judge's report and recommendation in full, found that there was no enforceable arbitration agreement between Flores and BJ's because the company failed to sign the agreement. BJ's timely appealed. *See* 9 U.S.C. § 16(a)(1).

## II.

## A.

Under the Federal Arbitration Act, a party is entitled to enforcement of an arbitration agreement where (1) there is a valid agreement to arbitrate and (2) the dispute falls within the scope of that agreement. *Huckaba v. Ref-Chem, LP*, 892 F.3d 686, 688 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA LP*, 710 F.3d 234, 236 (5th Cir. 2013)). In this case, only the first element is at issue.

Determining if there is a valid agreement to arbitrate is a question of law, which we review *de novo*. *Id.* We answer that question by looking to the validity of the contract under state law. *Id.* (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016)).

This contract is governed by Texas law, which requires: "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be

mutual and binding." *See Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). This case hinges on the final element, asking whether there was a validly executed contract in the absence of BJ's signature.

Under Texas law, "to make a signature a condition precedent to enforcement of a contract—including an arbitration agreement—the agreement must clearly and explicitly require a signature before it becomes binding." *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 170 (Tex. App.—El Paso 2015, no pet.). And the absence of a signature by a party will "not necessarily destroy" an agreement. *Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App.—El Paso 2015, no pet.); *see also In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceedings) (per curiam) (noting that Texas law does not require that an "employer must sign [an] arbitration agreement before it may insist on arbitrating a dispute with its employee").

## B.

Here, it is clear that Texas law did not require BJ's signature to form an enforceable arbitration agreement. Perhaps most importantly, there is no place for BJ's to sign the agreement. It contains no signature block at the end of the agreement for the company. *Cf. In re Bunzl USA, Inc.*, 155 S.W.3d 202, 211 (Tex. App.—El Paso 2004, orig. proceeding) (finding that a signature was required when the contract *had* a signature block intended for the employer); *Hi Tech Luxury Imps., LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.) (mem. op.) (same). And Flores has pointed to no Texas case in which a court has invalidated an agreement for lack of signature when there was no empty signature block.

No. 23-50038

Even if the contract was ambiguous on this point,[†] Texas law would require us to consider the parties' conduct. *See DISH Network LLC v. Alexander*, No. 13-20-00240-CV, 2021 WL 3085763, at *7 (Tex. App.—Corpus Christi July 22, 2021, pet. denied), *reh'g denied* (Aug. 30, 2021). The actions here decisively favor BJ's. The employer prepared Flores's arbitration agreement on its letterhead, as it does for every employee. BJ's presented the agreement to Flores for signature, as part of his onboarding process, and required that he complete it before starting employment. The company kept the agreement in his personnel file, and then sought to enforce it against him upon the filing of this suit. Texas courts have found that these considerations evince an employers' intent to be bound even when they did not sign arbitration agreements. *Id.* at *6–7; *Wright*, 469 S.W.3d at 761 (similar).

Flores says otherwise. He argues the plain language references to "signing" show that BJ's signature was a condition precedent for contract execution. Red Br. 13. But such a reading is possible only by looking at those clauses in isolation. And Texas law commands looking to the instrument as a whole, harmonizing all the clauses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). When viewing the complete instrument, the three scattered mentions of "signing," ROA.144–46, are not enough to "clearly and explicitly require a signature." *Firstlight*, 478 S.W.3d at 170.

Flores also believes that under BJ's reading, the contract would fail for lack of consideration. But this position misunderstands the nature of the

---

[†] Flores points out, for example, that three peripheral clauses mention BJ's signing the agreement. The core of the agreement, however, deals with binding arbitration, waiving the right to collective action, and detailing—at length—the arbitration procedures that the parties agree to use with no reference to a signature requirement at all. So we find the contract unambiguous. But as explained in the body text, it would not matter if the agreement's three signature references created ambiguity on this point.

arbitration agreement. The agreement here is supported by the consideration of new employment. Even though Flores's employment was at-will, that is not illusory because the agreement survives the employment relationship. It provides an avenue to address, for example, claims of wrongful termination. Accordingly, the Texas Supreme Court has repeatedly blessed such agreements. *See In re Whataburger Rests. LLC*, 645 S.W.3d 188, 197–98 (Tex. 2022), *reh'g denied* (June 17, 2022).

REVERSED.