# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50341

United States Court of Appeals
Fifth Circuit

**FILED**
June 11, 2018

Lyle W. Cayce
Clerk

KIMBERLY HUCKABA,

　　　　Plaintiff – Appellant,

v.

REF-CHEM, L.P.,

　　　　Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before KING, ELROD, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Kimberly Huckaba, a former employee of Ref-Chem, L.P., appeals the district court's judgment compelling arbitration. Because the express language of the agreement at issue requires for it to be signed by both parties and because it is undisputed that Ref-Chem did not sign the agreement, we REVERSE and REMAND.

I.

Huckaba sued her former employer, Ref-Chem, in federal district court. Ref-Chem moved to dismiss and compel arbitration. In support of its motion, Ref-Chem provided the court with an arbitration agreement that had been

No. 17-50341

signed by Huckaba. Next to Huckaba's signature is a signature block for Ref-Chem. Ref-Chem, however, did not sign the agreement.

The agreement provides that:

> The organization referred to above ("Employer") and the Employee, whose signature is affixed hereto, ("Employee"), mutually recognize that there are many advantages to using mediation and arbitration to settle any and all legal disputes and claims, including, but not limited to, all those arising from or in the course of employment. . . . In consideration of these many benefits, the mutual agreement of both parties to the binding arbitration provisions, the continuation of the employment relationship and other consideration, the sufficiency of which is hereby acknowledged by Employee, the parties hereto mutually agree that this document shall govern the resolution of all claims and disputes between them.

In addition, the agreement states that "[b]y signing this agreement the parties are giving up any right they may have to sue each other" and that the agreement "may not be changed, except in writing and signed by all parties." Along with a copy of the agreement, Ref-Chem submitted an affidavit from its human resources director. Among other things, the human resources director states that: (1) Ref-Chem kept Huckaba's signed arbitration agreement in her personnel file as a business record; and (2), pursuant to the agreement, Ref-Chem "voluntarily agreed to arbitrate any disputes between" itself and Huckaba.

In response, Huckaba also submitted an affidavit. She testifies in her affidavit that she signed the agreement "with the expectation and intent that it would be passed on for the signature of the appropriate Ref-Chem" officer. It was her "intention that in order to be bound by the agreement to arbitrate, Ref-Chem would also have to sign the agreement and agree in writing to be bound by its terms." She states that she did not discuss the terms of the agreement with anyone, nor did she orally agree to arbitration.

No. 17-50341

Based on the agreement, the district court granted Ref-Chem's motion to compel and dismissed the case without prejudice pending arbitration. The district court concluded that Huckaba's "continued employment after signing the Arbitration Agreement constitute[d] acceptance of that agreement by both" her and Ref-Chem. Huckaba timely appealed.

## II.

"This court reviews de novo a district court's ruling on a motion to compel arbitration." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). Enforcement of an arbitration agreement involves two analytical steps: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. *Id.*; *see also Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Here, the first step is at issue.

Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court. *Kubala*, 830 F.3d at 202. The parties agree that Texas law applies. Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Instead, the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements. *Id.* at 228. In addition, because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply.[1] *Klein*, 710 F.3d at 236.

---

[1] Though it is not clear that the district court actually applied an incorrect standard in deciding that the agreement to arbitrate is valid, we agree with Huckaba that the district court erred in stating that, at this stage, "[t]here is a 'strong presumption in favor of arbitration,' and the burden is on the party challenging the arbitration agreement to show it is invalid." (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

3

No. 17-50341

III.

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (quoting *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002)). As to the last element, whether a signature is required to bind the parties is a question of the parties' intent. *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 454 (5th Cir. 2013). Signatures are not required "[a]s long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract." *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 930–31 (S.D. Tex. 2008) (quoting *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.—Corpus Christi 2003, pet. denied)).

A court can decide intent as a matter of law. *Tricon Energy*, 718 F.3d at 454. "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "In identifying such intent, 'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *Id.* (quoting *J.M. Davidson*, 128 S.W.3d at 229). "We begin this analysis with the contract's express language." *Id.* And we end it there too.

The arbitration agreement at issue here contains: (1) a statement that "[b]y signing this agreement the parties are giving up any right they may have to sue each other;" (2) a clause prohibiting modifications unless they are "in writing and signed by all parties;" and (3) a signature block for the employer,

4

Ref-Chem. This express language clearly indicates an intent for the parties to be bound to the arbitration agreement by signing. The agreement also identifies the parties in the first line as "[t]he organization referred to above ('Employer') and the Employee, whose signature is affixed hereto." This clause makes clear the parties' intention that Huckaba would sign the agreement. It does not negate the other references to all parties signing.[2] Ref-Chem is right when it notes that Texas courts have held that a signature block by itself is insufficient to establish the parties' intent to require signatures. *See, e.g.*, *Tricon Energy*, 718 F.3d at 455; *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 168 (Tex. App.—El Paso 2015, no pet.). But in this case, we have more than a blank signature block that speaks to the parties' intent. The agreement also contains language that the parties needed to sign the agreement to give it effect or to modify it. Thus, the question of Ref-Chem's intention is answered by the agreement it drafted.

In several ways, this case is similar to a Texas appellate case, *In re Bunzl USA, Inc.*, 155 S.W.3d 202 (Tex. App.—El Paso 2004, orig. proceeding [mand. denied]). The court in *Bunzl* held that the trial court did not abuse its discretion in denying an employer's motion to compel arbitration where the employer failed to sign the arbitration agreement and show that the parties intended to be bound without the employer's signature. 155 S.W.3d at 210–12. The employer submitted an affidavit to the court stating that the agreement was kept in the employee's file and had in fact been reviewed before the employee's termination. *See id.* at 206. While the court considered this to be some indication that the employer considered itself bound without signing, the

---

[2] Moreover, because Ref-Chem's name is printed at the top of the agreement, the language appears to reflect the fact that the employer's name is already at the top of the agreement, regardless of which employee signs, but the name of the employee depends on which employee received and signed the agreement. Thus, it references the signature at the bottom of the page, to the right of which is the signature block for Ref-Chem.

trial court's decision to deny the motion to compel arbitration was affirmed in light of a signature block for the employer that was left blank and a clause in the agreement barring amendments without a writing signed by both parties, both of which are present here. *Id.* at 211.

Ref-Chem distinguishes *Bunzl* by saying that the "agreement in *Bunzl* was missing one key provision that the court itself acknowledged: it did not have a provision informing the plaintiff that his continued employment constituted acceptance of the agreement." Ref-Chem argues that such language is present in this case and, consequently, that another case, *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding), "controls." Ref-Chem highlights that, in *Halliburton*, the Texas Supreme Court held that an arbitration agreement that was not signed by either party was valid as a matter of law because: (1) the employer provided notice of the agreement; and (2) the employee accepted the agreement by continuing to work after receiving the notice. Because both conditions are met here, Ref-Chem insists that the agreement is valid.

Ref-Chem is wrong in two regards: (1) its focus on acceptance; and (2) its assertion that the agreement here, like the *Halliburton* agreement, informed Huckaba that her continued employment constituted acceptance. First, *Halliburton* addresses "whether an employee accepted the agreement," not the manner by which the agreement became binding. *See* 80 S.W.3d at 568. Here, the issue is the execution element of a binding contract under Texas law, not acceptance. Second, contrary to Ref-Chem's characterization of the agreement, and unlike the situation in *Halliburton*, the agreement here does not state that submission to arbitration is a term of employment and that commencing work constitutes acceptance and binds the parties. *See Halliburton*, 80 S.W.3d at 569 ("[I]f you . . . continue your employment, . . . you will agree . . . ."). Instead, the language about continued employment provides that "continuation of the

employment relationship" serves as *consideration* for the agreement. Thus, *Halliburton* does not control this case.

Ref-Chem also points to other factors to demonstrate its intent to be bound without signing, such as the fact that it created the arbitration agreement, kept the agreement as a business record, and moved to compel arbitration when Huckaba sued.[3]  Even if we were to consider this evidence, our conclusion would remain the same.  Considering the record as a whole, this evidence does not satisfy Ref-Chem's burden that it intended to be bound without signing the agreement.[4]  Indeed, if it were, then Ref-Chem could have it both ways—argue that it did not intend to be bound because it did not sign the agreement or it did because it kept the agreement and sought to compel arbitration.[5]  We give meaning to the words Ref-Chem used in its agreement.

---

[3] In addition, Ref-Chem highlights Huckaba's continued employment as evidence of an intent to be bound without signing.  Nonetheless, as discussed previously, the agreement did not state that Huckaba agreed to be bound as a condition of her employment.  Thus, her continued employment does not conflict with her statement that she intended that the parties would be bound upon signing.  For the same reason, the fact that Ref-Chem continued to employ Huckaba does not demonstrate its assent to the arbitration agreement.  *See, e.g.*, *Bunzl*, 155 S.W.3d at 211 n.4 ("The Agreement does not provide that [the employee's] employment is contingent upon the Agreement, nor does it provide that employment constitutes acceptance of the Agreement.  Thus, [the employer] did not necessarily manifest its assent to the Agreement by employing [the employee].").

[4] Notably, the same Texas court of appeals that decided *Bunzl* came to a different conclusion in *Firstlight*, holding that an arbitration agreement that had not been signed by the *employee* fell "squarely within the rule announced in *Halliburton*."  478 S.W.3d at 168.  However, that agreement, unlike the one here, had language like the language in the *Halliburton* agreement, stating that "[a]ny employee accepting or continuing employment . . . agrees to be bound by the Policy as a condition of his or her employment."  *Id.* at 162 (alteration in original).  Given this language, the court construed clauses that referenced signing the agreement as evincing the parties' intent to have signing be an alternative, rather than exclusive, manner of binding the parties.  *Id.* at 170.  The same tension between various provisions of the agreement—some that discuss being bound by signing and others by accepting or continuing employment—is not present here.  There is therefore no need to harmonize the agreement.

[5] At oral argument, when asked what he would say if Ref-Chem did not want to arbitrate, Ref-Chem's attorney said that he does not think the agreement gives Ref-Chem a

No. 17-50341

And because Ref-Chem did not sign the agreement, neither party is bound. *See Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) ("If parties negotiating a contract intend that the contract shall be reduced to writing and signed by the parties, . . . then either party may withdraw at any time before the written agreement is drawn up and signed by both parties." (alteration in original) (quoting *Gasmark, Ltd. v. Kimball Energy Corp.*, 868 S.W.2d 925, 929 (Tex. Ct. App.—Fort Worth 1994, no writ))).

Because we conclude that there is not a valid agreement to arbitrate in this case, the district court's judgment compelling arbitration is REVERSED, and this case is REMANDED for further proceedings.

---

choice but, assuming Huckaba did want to arbitrate, "the arguments would just be switched." Oral Argument at 21:01–22:16, *Huckaba v. Ref-Chem, L.P.*, No. 17-50341 (5th Cir. argued Feb. 8, 2018). When asked if that then meant he would lose, the attorney clarified with a "yes." *Id.* This exchange highlights the unilateral nature of the agreement under Ref-Chem's interpretation, which could render it unenforceable under Texas law. *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015) (holding that an arbitration agreement is unenforceable "if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate").