**Motion to Abate Denied; Affirmed in Part, Reversed in Part, Remanded, and Opinion filed November 17, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00632-CV
## NO. 14-19-00633-CV

## NATIONWIDE COIN AND BULLION RESERVE, INC., TURNER M. JONES, LAWRENCE KUYKENDALL, LARRY ANDREWS, DONALD FOGO, AND MELIDA JONES, Appellants

### V.

## JUNE THOMAS, Appellee

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause Nos. 2018-89093**

## O P I N I O N

In this suit under the Texas Deceptive Trade Practices–Consumer Protection Act ("the DTPA"),[1] Plaintiff June Thomas sued Nationwide Coin and Bullion

---

[1] *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63.

Reserve, Inc. and four individuals associated with the company, alleging that the defendants violated the DTPA in connection with her purchase of collectible coins from Nationwide for investment purposes. Nationwide and the individual defendants appeal the denial of their motion to compel arbitration, and in addition, Nationwide appeals the denial of the summary judgment rendered against it. We conclude that the appellants failed to establish, or to raise a fact question regarding, the existence of an arbitration agreement, but Thomas failed to conclusively establish that Nationwide violated the DTPA. We accordingly (1) affirm the trial court's denial of the motion to compel arbitration, (2) deny the appellants' motion to abate the appeal for an evidentiary hearing on the existence of an arbitration agreement, (3) reverse the summary judgment against Nationwide, and (4) remand the case for further proceedings.

## I. BACKGROUND

In early 2017, Texas corporation Nationwide Coin & Bullion Reserve, Inc. mailed Tennessee resident June Thomas a brochure advertising its collectible coins as an investment opportunity. Thomas called the telephone number on the brochure, and after speaking with Nationwide's Texas agents, agreed to purchase some coins. Between March and July of 2017, Thomas made nine purchases from Nationwide at a total cost of $167,300. She also made three additional purchases of coins that she resold to Nationwide for the amount she paid for them.

A year after her first purchase, Thomas called Nationwide to ask the company to repurchase a "1987 Chinese Gold Panda Coin" she had bought from Nationwide for $30,000. She spoke with Lawrence Kuykendall, who said he could not help her with the sale of the coin. She found Kuykendall's behavior suspicious and had her friend Greg Marnane call the company. Marnane allegedly spoke with Nationwide's "compliance director" Donald Fogo. The day after Marnane's call, Turner M. Jones

2

of Nationwide phoned Thomas and told her not to have Marnane call again. Jones offered to buy back the Gold Panda Coin for $31,500 but told Thomas the deal would be off if "any authorities" became involved.

About two weeks later, Thomas had her coin collection appraised by James Miller. Miller concluded that, as of April 3, 2018, the collection's wholesale value was about $27,633 and its retail price would be somewhere between $35,295 and $43,970.

Later that month, Nationwide's attorney Todd Collins wrote to Thomas, "[Nationwide] is ready and willing to purchase the [Chinese Gold Panda] coin, but we will need you to sign the Purchase Agreement and return the coin in order to conclude the sale." The document enclosed with the letter was not a purchase agreement, but a copy of an invoice showing that Thomas purchased and paid for the coin on the same date. According to Nationwide's chief financial officer Gina Wells, the terms and conditions of the sale were printed on the back of the invoice. These terms included an arbitration provision and a caution that Nationwide "does not guarantee that any client buying for investment purposes will be able to sell for a profit in the future."

Thomas refused to sign the invoice and instead asserted claims under the DTPA against Nationwide and its agents Turner M. Jones, Lawrence Kuykendall (whom Thomas sued both under that name and under Kuykendall's assumed name of "Larry Andrews"), Donald Fogo, and Melida Ramirez a/k/a Melida Jones. We refer to the individual defendants collectively as "the Jones Parties."

Thomas moved for traditional summary judgment, and Nationwide and the Jones Parties combined their response to the summary-judgment motion with their own motion to compel arbitration. The parties disputed whether a valid arbitration

3

agreement existed, and without holding an evidentiary hearing, the trial court denied the motion.

The same day that Nationwide and the Jones Parties filed their interlocutory appeal of the order denying arbitration, the trial court granted Thomas's summary-judgment motion as to Nationwide, awarding Thomas $202,600 in actual damages[2] and $405,200 as treble damages under the DTPA, together with interest and costs. In the same order, the trial court severed Thomas's claims against the Jones Parties into a separate suit so that the summary judgment against Nationwide became final. The record does not show that the trial court ruled on the summary-judgment motion as it pertains to the Jones Parties.

Nationwide appealed the judgment against it, and we granted the parties' motion to consolidate the two appeals. The Jones Parties joined Nationwide in asking us to reverse the trial court's denial of the motion to compel arbitration, and Nationwide additionally argues that the trial court erred in granting Thomas summary judgment and ordering Nationwide to pay her damages.

After the case was submitted on the briefs, Nationwide and the Jones Parties moved to abate the appeal and remand the cases to the trial court for an evidentiary hearing on the motion to compel arbitration. We ordered the motion taken with the case.

## II. DENIAL OF MOTION TO COMPEL ARBITRATION

In the trial court, a party seeking to compel arbitration bears the burden to establish that an arbitration agreement exists and that the claims presented fall within its scope. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per

---

[2] Although the judgment does not identify the injuries on which the damages were based, Thomas had asked in her summary-judgment motion for $142,600 as economic damages and $60,000 as mental-anguish damages.

curiam) (orig. proceeding), *abrogated on other grounds by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding). If there is conflicting evidence as to the material facts necessary to determine the issue, the trial court is to conduct an evidentiary hearing to resolve the dispute. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 354 (Tex. 2008) (orig. proceeding); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992). In an appeal from the denial of a motion to compel arbitration, we apply the abuse-of-discretion standard, deferring to the trial court's factual determinations if they are supported by evidence and reviewing legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), *cert. denied*, 139 S. Ct. 184, 202 L. Ed. 2d 40 (2018). Before addressing the evidence, however, we first must address Thomas's arguments that the evidence cannot be considered.

## A.    Thomas's Objections

The motion to compel arbitration rested entirely on the affidavit of Gina Wells, to which were attached copies of invoices and of the "Terms and Conditions," which Wells attested appeared on the reverse of each invoice. The Terms & Conditions include a section entitled "Arbitration Forum," and provides that "All claims and disputes arising under or relating to this Agreement are to be settled by binding arbitration in the State of Texas, County of Harris." In the opening paragraph of the affidavit, the notary public states, "After being duly sworn, [Wells] stated that that she has read this affidavit, has personal knowledge of the factual statements contained herein, and that such factual statements are true and correct."

Thomas objected to the following paragraphs of Wells's affidavit:

5.    There were numerous communications between Plaintiff and Nationwide Coin regarding sales transactions. These communications took place by telephone. These communications took place over interstate phone lines. For each transaction, there was one or more telephone communications by the sales person with Plaintiff, and then

5

a separate telephone communication by personnel in the Verification Department with Plaintiff.

6. Prior to completing any of the sales transactions with Plaintiff, Nationwide's Verification Department contacted Plaintiff to review Nationwide's [Terms & Conditions]. More specifically, for each sales transaction, Plaintiff was contacted by the Verification Department at Nationwide via telephone. For each sales transaction, the Verification Department specifically advised Plaintiff as to the location of the [Terms & Conditions] on the reverse of the invoice, advised that the transaction would only be made pursuant to the [Terms & Conditions], and that if Plaintiff failed to agree to the [Terms & Conditions], the transactions would not go forward. During each of these verification calls, Plaintiff was specifically informed of the arbitration provision of the [Terms & Conditions], as well as the risk involved. And, during each of these verification calls, Plaintiff specifically agreed that the transactions would be subject to Nationwide's [Terms & Conditions].

8. Plaintiff never objected to the [Terms & Conditions] associated with any of the transactions. Moreover, Plaintiff continued to purchase coins subject to the [Terms & Conditions] on multiple occasions. In total, Plaintiff entered into twelve (12) separate sales transactions with Nationwide, each of which included the very same [Terms & Conditions].

On appeal, Thomas re-urges her trial objections to Wells's affidavit on the grounds that Wells's testimony (1) is not based on personal knowledge of the facts recited, (2) is hearsay, (3) lacks a predicate, and (4) is conclusory. She also re-urges her objection that the Terms & Conditions attached to the affidavit is unauthenticated.

But, to preserve error for formal defects, one must both object and obtain a ruling, or except to the trial court's failure to rule. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (per curiam). The trial court did not rule on Thomas's objections, and Thomas did not except to the failure to rule. Her objections to defects of form are therefore waived. *See, e.g., Wash. DC Party Shuttle, LLC v. iGuide Tours*, 406 S.W.3d 723, (Tex. App.—Houston [14th Dist.] 2013, pet. denied)

6

(en banc) (lack of personal knowledge is a defect of form); *Okpere v. Nat'l Oilwell Varco, L.P.*, 524 S.W.3d 818, 824 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (hearsay is a defect of form); *Ortega v. Cach, LLC*, 396 S.W.3d 622, 628 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (insufficient foundation is a defect of form); *Mansions in the Forest, L.P. v. Montgomery Cty*., 365 S.W.3d 314, 317 (Tex. 2012) (defects in the form of a document's authentication are formal defects). Because the trial court did not rule on the formal objections, they have not been preserved for review, and we do not address them.

On the other hand, an objection that an affidavit is conclusory raises a defect of substance, which can be raised for the first time on appeal. *Pipkin v. Kroger Tex. L.P.*, 383 S.W.3d 655, 670 (Tex. App.–Houston [14th Dist.] 2012, pet. denied). But, a conclusory statement "expresses a factual inference without providing underlying facts to support that conclusion." *Leonard v. Knight*, 551 S.W.3d 905, 911 (Tex. App.—Houston [14th Dist.] 2018, no pet.). For the most part, the paragraphs of Wells's affidavit to which Thomas objected do not express factual inferences; they express facts. Thomas asserts that Wells's statements are conclusory because, for example, Wells and Thomas have never spoken and Wells does not name any person as having spoken to Thomas. But, Thomas's assertion is merely a restatement of her objections that Wells lacked personal knowledge of the facts to which she attested and failed to lay a sufficient foundation.

The sole exception is Wells's statement, "Moreover, Plaintiff continued to purchase coins subject to the [Terms & Conditions] on multiple occasions." This is Wells's conclusion (which may or may not be correct), but it is not "conclusory," because Wells has identified the facts on which that conclusion is based.

We therefore include both Wells's affidavit and its attachments in our scope of review.

**B.     Existence of an Enforceable Arbitration Agreement**

Over the course of this appeal, Nationwide and the Jones Parties have shifted their views as to what the evidence shows. In their opening brief, they argued that, under the Texas Arbitration Act ("the TAA"),[3] they conclusively established that a valid arbitration agreement exists, and that Thomas's claims fall within its scope. In their reply brief, they argued that the Federal Arbitration Act ("the FAA")[4] preempts the TAA, and that under the FAA, they conclusively established that an arbitration agreement exists. They also argued for the first time that if there is a fact issue about whether the parties agreed to arbitration, then we must remand the case for the trial court to conduct an evidentiary hearing. Finally, after the case was submitted, Nationwide and the Jones Parties filed a motion to abate the appeal, arguing that an evidentiary hearing is mandatory because the evidence does not conclusively establish their right to arbitration but instead creates a question of fact about whether an arbitration agreement exists. We accordingly address the threshold questions of whether the evidence is sufficient to raise a question of fact about the existence of an arbitration agreement enforceable under either the TAA or the FAA. If not, then Nationwide and the Jones Parties are entitled neither to reversal of the trial court's order denying arbitration nor to an evidentiary hearing, and we instead will affirm the trial court's ruling.

### 1.     *The evidence fails to raise a question of fact regarding the existence of an agreement enforceable under the TAA.*

By its terms, the TAA " does not apply to . . . an agreement for the acquisition by one or more individuals of property . . . in which the total consideration to be furnished by the individual is not more than $50,000" unless the arbitration

---

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098.

[4] *See* 9 U.S.C. §§ 1–16.

agreement is in writing and "the agreement is signed by each party and each party's attorney." TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(2), (b). Each of Thomas's purchases was for less than $50,000, but it is undisputed that there is no written arbitration agreement signed by Thomas and her counsel. Thus, an enforceable agreement to arbitrate exists, if at all, only under the FAA.

This is not to say that the FAA preempts the TAA's application based solely on the fact that the TAA imposes signature requirements that the FAA does not. The FAA preempts the TAA only if state law would "refuse to enforce an arbitration agreement *that the FAA would enforce*, either because (1) the TAA has expressly exempted the agreement from coverage, . . . or (2) the TAA has imposed an enforceability requirement not found in the FAA." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding) (citations omitted, emphasis added). We therefore next determine whether an enforceable arbitration agreement exists under the FAA.

### 2. *The evidence fails to raise a question of fact regarding the existence of an agreement enforceable under the FAA.*

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The arbitration provision on which Nationwide and the Jones Parties rely appears only on the back of the invoice provided to Thomas after each transaction was completed. As explained in *Hatch v. Jones*—a case that is virtually indistinguishable from this one—this is insufficient to create a binding agreement to arbitrate. *See Hatch v. Jones*, 4:18-CV-4146, 2019 WL 6137389, at *4

(S.D. Tex. Oct. 30, 2019), report and recommendation adopted, 2019 WL 6135119 (S.D. Tex. Nov. 15, 2019).

The plaintiff in that case sued Nationwide and three of the four Jones Parties based on evidence that is nearly identical to the evidence presented here. There, as here, Nationwide, Jones, Kuykendall, and Ramirez sought to compel arbitration based on the affidavit of Gina Wells and "on the Terms & Conditions that appear on the back of the invoice/packing slip that was included in each shipment of coins." *Hatch*, 2019 WL 6137389, at \*1. There, as here, Wells attested that the plaintiff agreed to the terms and conditions by phone. The *Hatch* court pointed out, however, that under Texas law, "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." *Id.* at \*4 (quoting TEX. BUS. & COM. CODE ANN. § 2.206(a)(2)). "Additional terms are construed as *proposals* for addition to the contract." *Id.* (quoting *U.S. Money Reserve, Inc. v. Kagan*, No. 18-CV-577, 2019 WL 1313469, \*3 (W.D. Tex. Jan. 29, 2019)) (alteration in original) (citing TEX. BUS. & COM. CODE ANN. § 2.207(b)). Thus, the *Hatch* court concluded that "the sales contract was formed upon the promise to ship, or at the latest the shipment of, the coins for each transaction." *Id.* Including an arbitration provision in the invoices sent to the purchaser after the contract was formed was insufficient to bind the purchaser. *Id.* at \*4; *See also Stewart & Stevenson, LLC v. Galveston Party Boats, Inc.*, No. 01-09-00030-CV, 2009 WL 3673823, at \*7–9 (Tex. App.—Houston [1st Dist.] Nov. 5, 2009, no pet.) (mem. op.).

To avoid this result, Nationwide and the Jones Parties cite a number of cases addressing circumstances in which an arbitration agreement was held to bind a non-signatory. But, the general rule is that parties must sign arbitration agreements to be

bound by them. *See, e.g.*, *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). The question of whether the agreement must be signed is one of intent. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689–90 (5th Cir. 2018). "If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract." *Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265, 277 (Tex. 2015); *Simmons & Simmons Constr. Co. v. Rea*, 155 Tex. 353, 357–58, 286 S.W.2d 415, 418 (1955). Here, however, there is no evidence that a written contract was submitted to Thomas before both parties had performed the contract.

On the other hand, there is evidence that Nationwide and its agents considered Thomas's signature necessary. *Cf. ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.—Corpus Christi 2003, pet. denied) ("As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required."). When Nationwide and Thomas were discussing Nationwide's repurchase of the 1987 Chinese Gold Panda Coin, Nationwide's counsel wrote to Thomas as follows:

> My understanding is you and [Nationwide] agreed several weeks ago that [Nationwide] would repurchase a 1987 Chinese Gold Panda coin for $31,500.00. The coin is more specifically described in the attached invoice . . . .
>
> [Nationwide] is ready and willing to purchase the coin, but we will need you to sign the Purchase Agreement and return the coin in order to conclude the sale.

The "Purchase Agreement" was merely the invoice with the Terms & Conditions on the reverse, and Thomas refused to sign it. Thomas's evidence that Nationwide's

11

counsel asked her to sign the Terms & Conditions, and that she refused to do so, is uncontroverted.

On this record, we cannot conclude that the trial court abused its discretion in denying the motion to compel arbitration. Because there is evidence only of an oral agreement, and of Thomas's later refusal to enter into a written agreement to arbitrate, the trial court could decide the issue summarily, without holding an evidentiary hearing.

We accordingly overrule Nationwide's and Jones Parties' common issue, and we deny their joint motion to abate the appeal for an evidentiary hearing.

## III. SUMMARY JUDGMENT

We turn now to Nationwide's appeal of the summary judgment rendered against it. We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). A party seeking traditional summary judgment bears the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. To determine if the movant met this burden, we consider the evidence in the light most favorable to the non-movant, indulging every reasonable inference in favor of the non-movant, and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Thomas asserted three "laundry-list" claims under section 17.46(b) of the DTPA and one claim for unconscionability. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 501 (Tex. 2001) ("Section 17.46(b) is a laundry list of specifically prohibited acts."). She moved for summary judgment on all four claims. Because

12

Thomas's first two laundry-list claims both concern deception through affirmative misrepresentations, we address them together.

## A.     Affirmative Misrepresentations

Under the DTPA, prohibited "false, misleading, or deceptive acts or practices" include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not" and "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (b)(7). In her summary-judgment motion, however, Thomas does not identify any false statements about the coins' "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities," or any false representations about the standard, quality, grade, style, or model of the coins.  The only representations to which she refers are those described below.

First, Thomas described an unsolicited brochure she received from Nationwide in the mail. In the brochure, Nationwide advertised "A Golden Opportunity" to purchase "$5 Gold American Eagles," which Nationwide described as "the most sought after and profitable group of coins in American history." Nationwide made an "Exclusive At Cost Offer" to sell its "Very Limited Supply" of these coins for $115 each. There is no evidence any of these statements were inaccurate. Thomas's own evidence showed that she bought five of these coins, and when they were appraised in April 2018, the least valuable of them had a retail value of $150–$255, which is more than the price at which the coins were offered for sale in the brochure. She produced no evidence that the brochure's representations about the "$5 Gold American Eagles" were false.

13

Second, Thomas attested that "[Nationwide and its employees] told me that I should expect to be able to sell [the coins] for more than for [sic] what I purchased them soon, if not immediately." But, Thomas's only evidence of the coins' value was an appraisal performed a year later. An appraisal from this later date does not conclusively establish that Thomas could not have profitably sold the coins "soon" or "immediately" after she purchased them. *Cf. Enzo Invs., L.P. v. White*, 468 S.W.3d 635, 647 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (affirming judgment notwithstanding the verdict because the business-valuation expert opined on the business's value as of the wrong date).

Third, Thomas related that "[o]n several occasions, [Nationwide] and its employees assured [her] their coins were a much better investment than traditional savings or investment accounts." Nationwide produced evidence that it repurchased three coins that Thomas asked it to, and offered to repurchase a fourth coin at a higher price. Thus, there is at least a question of fact as to whether the coins were a "better investment."

Fourth, Thomas stated that "[o]n several occasions, [Nationwide] and its employees suggested that I mortgage my home to buy more coins from them." This is a mere statement of opinion, not an actionable statement of fact. There is no evidence that the suggestion was inaccurate, or that Thomas acted on the suggestion, or that the mere making of the suggestion damaged her in any way. Moreover, such suggestions are not representations about Nationwide's "goods or services" so as to be encompassed by sections 17.46(b)(5) or (b)(7) of the DTPA as alleged.

Fifth, Thomas attested that in early March 2018 she spoke to Kuykendall at Nationwide about repurchasing the "1987 Chinese Gold Panda Coin" she purchased from Nationwide for $30,000 in 2017. She stated, "When I told Larry that I wanted [Nationwide] to buy-back the coin, the tone of the conversation changed. Larry cried

14

on the phone discussing a death and problems with his mother and that he could not help with the sale at that time." Once again, there is no evidence that the statement was false. Moreover, Thomas admits that on March 20, 2018, Turner Jones of Nationwide telephoned her and offered to repurchase the coin for the full $30,000 Thomas paid for it "and offered [her] an additional $1,500.00 for my trouble. Jones also stated that if 'any authorities got involved the deal would be off.'" Thomas rejected the offer, and she did not accept the written offer from Nationwide's counsel a month later to repurchase the coin. Thomas further stated that Jones also told her that "[Nationwide]/he would buy back the rest of the coins but that [Thomas] would have to wait five years to recoup all [her] money." But, again, these statements do not establish that Nationwide's representations about the coins at the time of sale were inaccurate. Moreover, Thomas herself cannot identify whether Jones's offer to purchase Thomas's entire collection and pay for it over a period of five years was made on his own behalf or on behalf of Nationwide.

Sixth, Thomas states several times in her affidavit that Nationwide and its employees "convinced" her of various things, but she does not identify what actually was said, so there is no way to determine whether Nationwide's statements were inaccurate.

In sum, Thomas failed to satisfy her burden as the summary-judgment movant to conclusively establish that Nationwide misrepresented the coins' characteristics, ingredients, uses, benefits, quantities, standard, quality, grade, style, or model. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (b)(7). We accordingly reverse the summary judgment as to her claims under these statutory provisions.

## B. Failure to Disclose

In her remaining laundry-list claim, Thomas alleged that Nationwide and the Jones Parties violated the DTPA's prohibition against "failing to disclose

15

information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." *Id.* §17.46(b)(24). But, again, Thomas does not identify what information about the coins Nationwide or the Jones Parties failed to disclose.

It appears to be Thomas's position that, at the time of her purchases, Nationwide misrepresented the coins' value, but her only evidence of the coins' value is an appraisal performed a year later. Thomas produced no evidence of the coins' market value at the time of purchase.

Viewing the evidence in the light most favorable to the non-movants, we conclude that Thomas failed to conclusively establish that Nationwide or the Jones Parties failed to disclose material information concerning the coins with the intent to induce Thomas into a transaction that she would not otherwise have entered. We therefore reverse the summary judgment as to this claim.

## C.    Unconscionability

Thomas's remaining DTPA claim is for unconscionability. The DTPA provides that a consumer may maintain an action if "any unconscionable action or course of action by any person" is "a producing cause of economic damages or damages for mental anguish." *Id.* § 17.50(a)(3). An "'[u]nconscionable action or course of action' means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."). *Id.* § 17.45(5).

But, as with her claim of failure to disclose, Thomas's unconscionability claim is unsupported by evidence. Thomas contends that Nationwide caused her damages "the moment she bought the first coins" because Nationwide sold her the coins "at

grossly inflated prices"; however, there is no evidence of any coin's market value at the time of sale. There is evidence of the coins' value a year after Thomas purchased them, but we cannot infer the coins' value at the time of purchase from that evidence because Thomas was the summary-judgment movant, and thus, all inferences must be drawn in Nationwide's favor.

We sustain the first issue in Nationwide's separate appeal. Because Thomas failed to conclusively establish that Nationwide is liable to her under the DTPA, we reverse the summary judgment in Thomas's favor without addressing Nationwide's remaining issues.

## IV. CONCLUSION

Having considered the evidence concerning Nationwide and the Jones Parties' motion to compel arbitration and Thomas's traditional motion for summary judgment under the standard of review applicable to each, we conclude that none of the movants satisfied their respective burdens. Thus, we affirm the order denying the motion to compel arbitration, reverse the order granting summary judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

/s/     Tracy Christopher
         Justice


Panel consists of Justices Christopher, Jewell, and Hassan.

17