# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2025

Lyle W. Cayce
Clerk

_____

No. 24-50954

_____

Octavia Mertens, *on behalf of themself and others similarly situated*; Angelica Herrera, *on behalf of themself and others similarly situated*; Belen Cadena, *on behalf of themself and others similarly situated*; Kelly Sanchez, *on behalf of themself and others similarly situated*; Maggie Montes, *on behalf of themselves and others similarly situated*; Breona Horne, *on behalf of themselves and others similarly situated*,

*Plaintiffs—Appellees*,

*versus*

Benelux Corporation, *doing business as* Palazio Men's Club; Anthanases Stamatopoulos; Michael Mealey,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:24-CV-276

_____

Before Dennis, Graves, and Duncan, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

Octavia Mertens signed both signature boxes of an arbitration agreement with her employer, Benelux Corporation. Benelux moved to compel arbitration without having signed the agreement. Because under the language of the agreement both Mertens' and Benelux's signatures were

necessary to create an enforceable contract, we AFFIRM the district court's judgment denying the motion to compel arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Mertens, Belen Cadena, Angelica Herrera, and Kelly Sanchez, were employed as waitstaff at Defendant Benelux Corporation's ("Benelux") Palazio Men's Club in Austin, Texas.[1] In 2024, Plaintiffs sued Benelux, claiming violations of the Fair Labor Standards Act.

In 2020, Benelux distributed an arbitration agreement ("Agreement") to employees. The last page of the Agreement read:

> By signing this arbitration agreement, Employee and the Club's Representative represent that:
>
> - They have fully read this agreement prior to signing it;
> - They have been provided a copy of this agreement and have had opportunities to both ask questions regarding its content and have it reviewed by persons of their choice, including by attorneys and accountants, before they have signed it; and
> - They understand the terms of this agreement and agree to be bound by them.

Immediately below these provisions were two signature boxes, one for "Club," Benelux Corporation d/b/a The Palazio, and one for "Employee."

Cadena signed the Agreement in February 2020, initialing and dating each page. On the last page, Cadena signed and dated both signature boxes.

Benelux's General Manager, Michael Mealey, usually countersigned the employee arbitration agreements. However, because of "an unintentional

---

[1] Cadena, Herrera, and Sanchez are not the subjects of this appeal.

mistake on [his] part," Cadena's Agreement did not bear Mealey's signature. Mealey testified that he may have been reviewing several agreements, and, seeing the "Club" signature page filled out, assumed another representative had signed.

After Cadena and the other plaintiffs sued, Benelux moved to compel arbitration. Cadena countered that the Agreement was not enforceable against her because Benelux did not sign it. Cadena declared she did not recall why she signed the Benelux signature block, but expressed that she "did not intend to be bound by the Arbitration Agreement until and unless Benelux also signed the Arbitration Agreement and agreed in writing to be bound by the Arbitration Agreement's terms."

The Magistrate Judge recommended denial of Benelux's motion to compel arbitration because the Agreement contains clear and express language stating that both parties needed to sign it to give it effect. Benelux objected. The district court adopted the report and recommendation, agreeing that the Agreement contains clear and express language that both signatures were required, and "[b]ecause [Benelux] did not sign Cadena's arbitration agreement, there is no valid and enforceable arbitration agreement between them and Cadena."

Benelux has now appealed.

## II. STANDARD OF REVIEW

We review de novo a district court's ruling on a motion to compel arbitration. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (quoting *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). Whether there is a valid agreement to arbitrate is a question of state contract law and is for the court. *Id.* The parties agree that Texas law applies.

"Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists." *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). "An employer moving to compel arbitration bears the burden of showing that the proffered agreement is valid." *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021) (citing *J.M. Davidson*, 128 S.W.3d at 228).

## III. DISCUSSION

Under Texas law, a valid contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba*, 892 F.3d at 689 (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012)). The parties dispute the last element.

"As to the last element, whether a signature is required to bind the parties is a question of the parties' intent." *Id.* "Signatures are not required as long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective." *Id.* (citation modified). However, "when the terms of the contract make it clear that a signature is required, a party's failure to sign the agreement will render the agreement unenforceable." *Wright v. Hernandez*, 469 S.W.3d 744, 758 (Tex. App.—El Paso 2015, no pet.).

**A. Both signatures were necessary to make the Agreement enforceable.**

We conclude that Benelux's signature was necessary to make the Agreement enforceable. We are compelled to this conclusion by cases applying Texas law examining similar contractual language.

In the first case, an employee was terminated and sued the employer, and the employer filed a motion to compel arbitration. *CC Rest., L.P. v. Olague*, 633 S.W.3d 238, 240–41 (Tex. App.—El Paso 2021, pet. dism'd). The relevant language in their arbitration agreement stated:

> The Parties expressly acknowledge and understand that by signing this Agreement, each is affirming that he/she/it has read and understands this arbitration provision; each is agreeing to be bound by it; each is waiving its respective rights to have a Dispute between or among them adjudicated by a court or by a jury; and each is waiving its respective rights to have a Dispute between or among them proceed as a class, collective, or consolidated action or arbitration.

*Id.* at 241. The agreement also specified it could not be modified except in writing by both parties. *Id.*

The court held that the agreement "unequivocally required both parties' signatures for each to be bound to arbitrate their claims against the other when it said 'by signing this Agreement, each is affirming that he/she/it has read and understands this arbitration provision; each is agreeing to be bound by it.'" *Id.* at 242. The employer did not sign the agreement, and the court could not compel arbitration. *Id.* at 242–43.

Benelux's Agreement contains similar language. It states that "[b]y signing this arbitration agreement, Employee and the Club's Representative represent that," followed by three provisions starting with the word "they." Just as the language in *Olague*, which states that "each" agreed to be bound by the agreement, the word "they" also indicates that both parties' signatures were necessary.

In another case, the agreement at issue provided that "[b]y signing this agreement the parties are giving up any right they may have to sue each other" and that the agreement "may not be changed, except in writing and

signed by all parties." *Huckaba*, 892 F.3d at 688. We determined the agreement was invalid without the employer's signature because the agreement included: "(1) a statement that '[b]y signing this agreement the parties are giving up any right they may have to sue each other;' (2) a clause prohibiting modifications unless they are 'in writing and signed by all parties;' and (3) a signature block for the employer." *Id*. at 689. "This express language clearly indicat[ed] an intent for the parties to be bound to the arbitration agreement by signing." *Id*.

Benelux argues that *Huckaba* does not control because the Agreement has no modification clause. While this is true, the other two *Huckaba* elements are present—the "by signing" statement and a signature block for the employer.

**B. Specific conditional language is not necessary to create a condition precedent to contract formation.**

Benelux argues that parties must "clearly and explicitly" express an intent to make signatures a condition precedent to contract formation. Benelux posits that the Agreement's "by signing" clause does not indicate an intent to make signatures a condition precedent, since there is no language stating that the Agreement "must" or "shall" be signed by both parties, or any language indicating that the contract is not formed "unless," "until," or "only if," they sign.

Conditional language is highly indicative of signatures as a condition precedent. *See In re Bunzl USA, Inc.*, 155 S.W.3d 202, 211 (Tex. App.—El Paso 2004, orig. proceeding) (language stating, "[n]o modification or amendment of any provision of this Agreement is effective unless it is in writing and signed by the parties to this Agreement" made signature a condition precedent to formation); *Sec. Bank of Whitesboro v. Hudgins*, No. 4:95 CV 341, 1998 WL 34262016, at *2, *6 (E.D. Tex. July 1, 1998) (signature

was condition precedent where agreement stated, "signed contingent upon bank providing confidentiality of terms of judgments and Bill Stephens signing.").

However, as Benelux admits, specific conditional phrases are not required to create a condition precedent to contract formation. *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). Courts have held in several cases that both parties' signatures were required even when the contract or agreement did not include specific conditional language. *See Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) (applying Texas law, where the agreement stated: "In witness whereof, the parties have caused this Agreement to be executed by their duly authorized representative at Dallas, Texas, on the date first above written," followed by signature blocks); *Simmons & Simmons Const. Co. v. Rea*, 286 S.W.2d 415, 417 (Tex. 1955) (written contract was delivered to the petitioner "with directions to obtain a bond, sign the instrument, return the instrument, with the bond, for the signature of respondent, and be available to begin work when materials were had"); *Hi Tech Luxury Imports, LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.) (document provided that "[b]oth the Company and [employee] agree that any arbitration proceeding must move forward under the Federal Arbitration Act," and "both I and the Company give up our rights to trial by jury").

### C. Benelux's cited cases are distinguishable.

Benelux cites four cases to support its argument that the Agreement is enforceable. Only two apply Texas law, and none contains language sufficiently similar to the language in this Agreement.

In the first, a court held that the provision "[y]ou and AFV shall execute the arbitration agreement set forth in Exhibit B," was not a condition precedent to the formation of the contract. *Aprill v. Aquila*, No. 20 C 04657,

2022 WL 614984, at *8 (N.D. Ill. Mar. 1, 2022) (applying Texas law). In addition, the agreement's statement that "[b]y signing this Agreement, Employee acknowledges that he or she is knowingly and voluntarily waiving the right to file a lawsuit" only indicated that the plaintiff's signature acknowledged his waiver of the right to sue in court, not that a signature was required for the agreement to come into effect. *Id.*

In the second case, the agreement contained the following statements: "Except as provided below, Employee and the undersigned employer … agree all disputes and claims between them shall be determined exclusively by final and binding arbitration," "By signing this Agreement, Employee acknowledges," and an instruction that checking a signature box was "equivalent to a handwritten signature." *Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, at *1 (5th Cir. May 4, 2022) (applying Texas law). We held that none of the "references to a signature clearly establish [the employer's] signature was a condition precedent." *Id.* at *4.

*Aprill* and *Soni* are inapposite to this case because the provision that is similar to that in Benelux's Agreement—"by signing this Agreement, Employee acknowledges"—only requires the employee's signature, not two signatures. In addition, the *Aprill* court emphasized that the language indicated acknowledgement, not intent to be bound. By contrast, Benelux's Agreement specifies that both the "Employee and the Club's representative represent," and indicates the intent to be bound by its terms.

In the third case cited by Benelux, a shareholder agreement contained an arbitration clause which stated that "each Shareholder understands that by signing this agreement he or she agrees to submit any claims arising out of his or her relationship with the Corporation to binding arbitration." *Craddock v. LeClair Ryan, P.C.,* No. 3:16-CV-11, 2016 WL 1464562, at *1, *4 (E.D. Va. Apr. 12, 2016) (citation modified). The plaintiff did not sign the agreement,

and, applying Virgina law, the court found that because the contract did not specify that a signature was the only manner of acceptance, the signature was not required. *Id*. at \*4–6.

There are two main problems with *Craddock*, aside from the fact that it does not apply Texas law. The court focused on offer and acceptance, while here "the issue is the *execution* element of a binding contract." *Huckaba*, 892 F.3d at 691 (emphasis added). Under Texas law, a binding contract requires acceptance in compliance with the terms of the offer as well as execution and delivery of the contract with the intent that it be mutual and binding. *See id*. at 689. *Craddock* focuses on the former while we are concerned with the latter. *Craddock* does go on to analyze the "intent to be bound" element but does not discuss the parties' signatures in that section. 2016 WL 1464562, at \*8. Regardless of this confusion, *Craddock* is not analogous for an additional reason—the agreement states that "by signing . . . he or she agrees" in the singular, unlike the language contained in Benelux's Agreement.

In the last case Benelux cites, an arbitration agreement stated: "By their signatures below, the parties mutually agree to submit any and all claims that may arise between [them] that cannot be resolved internally to binding arbitration . . . ." *Hickerson v. Pool Corp.*, No. 19-CV-02229, 2020 WL 5016938, at \*2 (D. Colo. Aug. 25, 2020). The court found, while analyzing Colorado, Michigan, Virginia, and California law, that there was no condition precedent despite the phrase "by their signature" because the agreement did not use conditional language. *Id*. at \*4 & n.2.

*Hickerson* is problematic because it does not apply Texas law, and it relies on the "acceptance" portion of *Craddock* to aid in its analysis. *Hickerson* acknowledged that specific conditional language was not required in order to find that signatures were a condition precedent to the validity of the contract but still relied on a lack of this conditional language in its

conclusion. Texas cases come out differently on this question. *See Olague*, 633 S.W.3d at 240–41.

Benelux also makes an argument in this vein. It posits that even without the signature, the parties' conduct shows their acceptance. Benelux suggests that by presenting Cadena with the Agreement, it made an offer to arbitrate claims. Cadena then accepted by initialing each page and signing the Agreement. Fine—there is offer and acceptance, though this does not go to the "execution" element of contract validity. Benelux goes on: if the Agreement had required Benelux's signature, Benelux made an "invitation to offer" when it gave the Agreement to Cadena. Cadena, as offeror, did not intend to require Benelux's signature as the only means of acceptance, since she signed both signature blocks.

Even accepting Benelux's premise, this argument goes to the acceptance element of contract formation. As previously noted, "the issue is the execution element." *Huckaba*, 892 F.3d at 690.

**D. We need not analyze whether the parties' conduct demonstrated their acceptance.**

Benelux's final argument is that its actions showed its intent to be bound by the Agreement: by drafting, offering, receiving, and then trying to enforce the Agreement, it manifested its assent to be bound.

"[P]arties to an arbitration agreement may express their intent to require a signature as a condition precedent to the agreement's enforceability." *Wright*, 469 S.W.3d at 758. When the terms of a contract clearly require a signature, failure to sign will render the agreement unenforceable. *Id.* "Conversely, when there is no evidence in the record to suggest that the parties intended for a signature to be a condition precedent . . . failure to sign the agreement does not render [it] unenforceable, [if] it appears that the parties otherwise gave their consent to

the terms of the agreement." *Id*. at 758. For example, "a part[y's] intent to be bound by a contract may be evidenced by its conduct." *Id*. at 760.

The cases cited by Benelux follow this path. *See id.* (concluding that there was no provision requiring parties' signatures, and parties' affidavits showed that the employer presented, maintained, and sought to enforce the arbitration agreement); *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 170 (Tex. App.—El Paso 2015, no pet.) ("The 2011 arbitration agreement does not clearly and explicitly require [the employee's] signature before it can be enforced. Rather, it clearly and explicitly informs [employer's] employees that continued employment constitutes their agreement to be bound by the arbitration agreement."); *Flores v. BJ's Rest. Operations Co.*, No. 23-50038, 2023 WL 6533452, at *1 (5th Cir. Oct. 6, 2023) (holding that there was no signature requirement because the agreement was a missing signature block, then analyzing the parties' conduct).

"We begin this analysis with the contract's express language. Unless that language is ambiguous, we end it there too." *Hi Tech*, 2019 WL 1908171, at *2 (citation modified). The Agreement's language is not ambiguous. Both parties' signatures were required to execute a valid arbitration agreement, and that is where we end our inquiry.

The district court's judgment is AFFIRMED.

11